**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
**Heidi Guettler, OSB #940702**
guettleh@jacksonlewis.com
**Mark A. Crabtree, OSB #015070**
crabtreem@jacksonlewis.com
Jackson Lewis, LLP
806 SW Broadway, Ste. 400
Portland, OR 97205
(503) 229-0404
(503) 229-0405 (facsimile)
**ATTORNEYS FOR PLAINTIFFS**

**Robin S. Conrad** (*pending pro hac*)
rconrad@uschamber.com
**Shane B. Kawka** (*pending pro hac*)
skawka@uschamber.com
National Chamber Litigation Center, Inc.
1615 H Street, NW
Washington, DC 20062
P: (202) 463-5337 F: (202) 463-5346
**ATTORNEYS FOR CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ASSOCIATED OREGON INDUSTRIES and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD AVAKIAN, Individually and as Commissioner of the Oregon Bureau of Labor and Industries, and LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 296,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**[28 U.S.C. §§ 2201-2202; F.R.C.P. 65]** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Plaintiffs, Associated Oregon Industries ("AOI") and the Chamber of Commerce of the United States of America (the "Chamber") (collectively "Plaintiffs"), by and through their counsel of record, for their complaint against Defendants Brad Avakian, individually and as Commissioner of the Oregon Bureau of Labor and Industries ("Avakian"), and Laborers' International Union of North America, Local No. 296 ("Local 296") (collectively "Defendants"), upon knowledge and belief allege:

## I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under the United States Constitution provision guaranteeing free speech and further arise under the laws of the United States, namely the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as this Court is sited in the judicial district where a substantial part of the events giving rise to Plaintiffs' claims have occurred, are now occurring, and will occur in the future. Some of Plaintiffs' employer-members are situated in this district and are and will continue to be affected by the harms sought to be remedied in this Complaint.

## II.

## NATURE OF ACTION

3. This action seeks declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201-2202, that Oregon Laws 2009, chapter 658, which originated in the 2009 Oregon Legislature as Senate Bill 519 ("SB 519"), is preempted by the NLRA and violates the First

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Amendment guarantee of free speech under the United States Constitution. A copy of the full text of SB 519 is attached hereto as Exhibit A, and is hereby incorporated herein by reference.

### III.

### PARTIES AND ASSOCIATIONAL STANDING

4. Plaintiff Chamber is an association that represents 300,000 direct members and indirectly represents an underlying membership of three million businesses of all sizes, sectors, and regions, as well as state and local chambers and industry associations. Plaintiff AOI is a member of the Chamber. The Chamber's mission is, in part, to advocate for its members about matters of importance to the membership and to advocate on the membership's behalf when the members could be exposed to adverse actions by challenging issues. The Chamber has several hundred members located in Oregon, some of which are currently experiencing union organizing campaigns and which plan to hold mandatory meetings after January 1, 2010 to express employer views about whether employees should join a labor organization. The Chamber brings this action in a representative capacity on behalf of its members who qualify as private sector "employers" under SB 519, who are currently experiencing union organizing activity, who anticipate experiencing union organizing activity after January 1, 2010, who engage in mandatory communications with employees about whether or not to join a labor organization, and who do not qualify as a political organization under SB 519.

5. AOI is a non-profit association with approximately 1,530 employer members in Oregon which collectively employ approximately 225,000 Oregon employees. AOI's mission is, in part, to advocate for its members about matters of importance to the membership and to advocate on the membership's behalf when the members could be exposed to adverse actions by challenging issues. AOI brings this action in a representative capacity on behalf of its members

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

who qualify as private sector "employers" under SB 519, who are currently experiencing union organizing activity, who anticipate experiencing union organizing activity after January 1, 2010, who engage in mandatory communications with employees about whether or not to join a labor organization, and who do not qualify as a political organization under SB 519.

6. At least one of AOI's members is currently the target of an aggressive union organizing campaign undertaken by Defendant Local 296 (hereafter "Member A").

7. Avakian is currently serving as Commissioner of the Oregon Bureau of Labor and Industries ("BOLI"). Oregon Revised Statute ("ORS") 651.050 mandates that as Commissioner, Avakian enforce all laws regulating the employment of adults, including all laws enacted for the protection of employees. SB 519, which creates a broad new statutory class of wrongful terminations in Oregon, is a law enacted to protect employees. ORS 651.060(1) authorizes the Commissioner to investigate alleged violations. Pursuant to ORS 651.060(1) and Oregon Administrative Rule ("OAR") 839-026-0020, the Commissioner is empowered to issue subpoenas *ad testificandum* and subpoenas *duces tecum* as part of executing his enforcement obligations. The Commissioner's office has already identified SB 519 as a Civil Rights Law and has set up a complaint intake procedure. (Exhibit B.)

## IV.

## GENERAL FACTUAL ALLEGATIONS

8. Frustrated by delays in amending the NLRA to limit employer opposition to union organizing, organized labor resorted to state-by-state attack on federally protected speech rights. The AFL-CIO drafted model legislation, which is often generically referred to as the Worker Freedom from Intimidation Act ("WFA"). Over the past several years, versions of the WFA have been introduced in numerous states. The legislation has drawn sharp criticism in several

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

states, including Washington where the Washington Attorney General recently issued a clear rebuke of Washington's proposed WFA, a copy of which is attached hereto as Exhibit C. Through passage of SB 519, Oregon became the first state in the nation to pass a version of the WFA that includes a bar on mandatory employer communications in opposition to union organizating.

9. On June 30, 2009, Governor Kulongoski signed SB 519 into law. The law is scheduled to become effective January 1, 2010.

10. It is not immediately clear from an initial reading of SB 519 why the AFL-CIO drafted the WFA and why the legislation has been placed so high on its national agenda. A careful review of the bill, however, reveals its true purpose. Section 2 of SB 519 prohibits employers from taking "any adverse employment action" against an employee who declines to attend or participate in an employer-sponsored meeting or communication with the employer . . . if the primary purpose of the meeting or communication is to communicate the opinion of the employer about religious or political matters[.]" "Political matters," in turn, are defined in Section 1(5) of SB 519 to include "the decision to join, not join, support or not support any lawful political or constituent group or activity." "Constituent group," in turn, is defined in Section 1(1) of SB 519 to include "mutual benefit alliances," which in turn are defined to include a "labor organization." Lest there be any confusion, SB 519 was drafted, introduced, lobbied for and ultimately passed to prevent employers from holding mandatory meetings with employees to discuss whether employees should join a union.

11. As mentioned above, at least one of AOI's members is currently the target of an aggressive union organizing campaign undertaken by Defendant Local 296. Member A has been the organizing target of Local 296 since approximately May 2009. Local 296 has engaged in an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

assortment of aggressive organizing activity directed at Member A, including trespassing, hand billing, displaying large inflatable animals, group picketing, disseminating buttons and other union insignia, contacting employees at home, holding group meetings during evening hours away from the job site, falsifying union authorization cards, and even threatening immigration raids. In addition, Local 296 has filed 20 unfair labor practice charges against Member A with the National Labor Relations Board (NLRB), some of which are scheduled for trial in January 2010. Local 296 has also instigated or prolonged an audit by the Office of Federal Contract Compliance Program ("OFCCP") and has been instrumental in the filing of at least five administrative complaints of discrimination with the Bureau of Labor and Industries ("BOLI"). In short, Local 296 is aggressively targeting Member A and in so doing is consistently attempting to portray the company and its executive management in a negative light.

12. Over the last six months, Member A has held multiple mandatory meetings with its non-management employees to both counter union rhetoric and provide information to employees about the realities of a unionized workplace, including the requirement to pay dues and the possibility of being forced out on strike. As part of these meetings, Member A's executive management informs employees that the company has chosen not to support the union's efforts and believes that a non-union workplace benefits both workers and the company. To ensure that all employees have the benefit of hearing the employer's views, these meetings have been mandatory.

13. Member A believes that the organizing campaign initiated by Local 296 will continue well into 2010. The NLRB has scheduled a mid-January trial on some of the unfair labor practice charges filed by Local 296 against Member A. As a result, Member A fully anticipates the union will use the trial as an opportunity to engage in boisterous demonstrations.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

In addition, the union has yet to file a petition with the NLRB seeking an election, although it is likely that Local 296 has already obtained enough authorization cards to petition for an election. Even if Local 296 were to file an election petition in mid-December 2009, the NLRB election would not take place until 2010. Finally, Local 296 has been consistently engaging in organizing activity over the last three months with no signs of abating.

14. Local 296's ongoing organizing activity, coupled with the Member A's continuing need to counter union rhetoric and communicate its own views about the negative aspects of a unionized workplace, have created an environment in which it is vitally important for Member A to continue to hold mandatory meetings on the subject of whether employees should vote to join a labor organization. Member A intends to continue holding such mandatory meetings after January 1, 2010.

15. Fearing that Local 296 will attempt to use SB 519 to its advantage after January 1, 2010, Member A recently sent the union a letter seeking some measure of assurance. In that letter, Member A sought the Local 296's agreement that it would not: (1) distribute any handbills regarding alleged violations of SB 519; (2) allege in any meeting or other form of communication that Member A has violated SB 519; (3) encourage any employee to file a civil action under SB 519; (4) file any lawsuit on behalf of an employee against Member A pertaining to SB 519; or (5) file an administrative complaint with BOLI pertaining to SB 519. The letter closed with a statement that the union's silence would be construed as a representation that it intended to engage in one or more of the preceding attacks based on SB 519. To date, the union has not responded to Member A's letter.

16. In addition to Member A, Plaintiffs have numerous member-employers who hold mandatory meetings and engage in other forms of mandatory communications as a preferred

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

means of communicating their views about whether employees should join a labor organization. Employees are required to participate in the communications, or face discipline up to and including termination. These mandatory communications have been ongoing and are planned to continue in 2010.

17. Due in part to the threat of civil litigation and potential for negative publicity resulting from a knowing violation of Oregon law, these employers have joined and maintain memberships in the Plaintiff associations and rely on those associations to advocate on their behalf with respect to important issues facing the membership. These members are private sector "employers," as that term is defined in Section 1(3)(a) of SB 519.

## V.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

### (NLRA Preemption)

18. Plaintiffs reallege and incorporate herein their allegations in paragraphs 1 through 17 above.

19. Section 2 of SB 519 prohibits employers from requiring their employees to attend meetings "if the primary purpose of the meeting . . . is to communicate the opinion of the employer about . . . political matters." Section 1(5) of SB 519 defines "political matters" to include "the decision to join [or] not join . . . any constituent group," and Section 1(1) defines "constituent group" to include "labor organizations." As such, SB 519 effectively prohibits employers from conducting mandatory meetings with their employees to discuss whether those employees should join a union.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

20. Employers have a fundamental right under the NLRA to freely communicate views about whether employees should join a labor organization. *See Linn v. United Plant Guard Workers*, 383 U.S. 53, 59-64 (1966) (Section 8(c) of the NLRA manifests a congressional intent to "encourage free debate on issues dividing labor and management."); *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (employers may express "any of [their] general views about unionism or any of [their] specific views about a particular union . . . ."); *United Technologies Corp.*, 274 N.L.R.B. 1069, 1074 (1985), *aff'd* 789 F.2d 121 (2d Cir. 1986) ("an employer has a fundamental right, protected by Section 8(c) of the Act, to communicate with its employees").

21. Pursuant to Section 9 of the NLRA, the NLRB is empowered to regulate the Board election process. See 29 U.S.C. § 159(c). The Board has determined that mandatory employer meetings to discuss an employer's views about whether its employees should join a union are protected speech under the NLRA. *See e.g., Peerless Plywood*, 107 N.L.R.B. 427, 429 (1953) (holding employers may deliver mandatory audience speeches to employees, provided the speech is non-coercive and does not take place within 24 hour of a Board election). The Board has upheld this fundamental employer right for more than 50 years.

22. Courts have developed two preemption doctrines within the labor context, both of which are designed to ensure a uniform body of federal law. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959); *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1975). SB 519 is preempted under both doctrines.

23. The *Garmon* preemption doctrine "is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integral scheme of regulation' established by the NLRA." *Chamber of Commerce v. Brown*, __ U.S. __,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

128 S. Ct. 2408, 2412 (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)). To accomplish that goal, the NLRA "forbids States to 'regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.'" *Brown* at 2412 (quoting *Wisconsin Dep't of Indus. v. Gould, Inc.*, 475 U.S. 282, 286 (1986)). *Garmon* preempts state regulation of "*any* conduct subject to the regulatory jurisdiction of the NLRB." *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 749 (1985) (emphasis added).

24. Commencing with *Peerless Plywood* and continuing over the last 50 years, the NLRB has used its authority under section 9 to consistently uphold the ability of employers to conduct mandatory meetings with employees pursuant to section 8(c). SB 519 seeks to deny employers precisely what the NLRB has stated they are guaranteed under federal law, thus triggering *Garmon* preemption.

25. The Court in *Machinists* expanded on *Garmon*, recognizing Congress intended for certain conduct to remain unregulated. *Machinists*, 427 U.S. at 147 ("[S]elf-help is of course also the prerogative of the employer because he, too, may properly employ economic weapons Congress meant to be unregulable."); *see also Golden State Transit v. City of Los Angeles*, 493 U.S. 103, 112 (1989) ("The interest in being free of governmental regulation of the 'peaceful methods of putting economic pressure upon one another,' is a right specifically conferred on employers and employees by the NLRA.").

26. The Court recognized in *Brown* that although the NLRB does regulate speech within the organizing context, *Machinists* preemption still provides employers with an avenue for relief. Specifically, the Court noted that the NLRA has "policed a narrow zone of speech to ensure free and fair elections . . . ." That said, the Court also noted that Congress has not conferred to the NLRB the right to regulate employer speech more generally. Rather, non-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

coercive employer speech is meant to be a zone free from all regulation, including any regulation by states.

27. Through SB 519, Oregon has attempted to regulate employer speech about whether employees should join a union. Oregon's decision to assist unions during organizing campaigns by limiting federally protected speech is precisely the type of governmental action that *Machinists* preemption is intended to bar.

28. Based on the foregoing, Plaintiffs seek a judgment declaring the provisions of SB 519 applicable to speech regarding whether employees should join a labor organization to be preempted by the NLRA under both the *Garmon* and *Machinists* doctrines. Plaintiffs' declaratory judgment request is applicable only to those Oregon employers subject to the NLRA.

## SECOND CLAIM FOR RELIEF

### (Violation of First Amendment to United States Constitution)

29. Plaintiffs reallege and incorporate herein their allegations in paragraphs 1 through 28 above.

30. The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment is applicable to the State of Oregon by virtue of the Fourteenth Amendment to the United States Constitution.

31. Employers have a First Amendment right to engage in non-coercive speech about unionization. *See Thomas v. Collins*, 323 U.S. 516, 537-538 (1945). SB 519 is a content based restraint on employers' ability to communicate views about whether employees should join a labor organization. In short, Plaintiffs' members have a First Amendment right to speak to their employers on "political matters," as that term is defined in Section 1(1) and 1(5) of SB 519.

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

32. Based on the foregoing, Plaintiffs seek a judgment declaring the provisions of SB 519 applicable to speech regarding whether employees should join a labor organization to violate the First Amendment to the United States Constitution.

WHEREFORE, plaintiffs pray for judgment as follows:

1. Declaring that SB 519, as applied to NLRA-covered employers engaging in mandatory communications with non-management employees about whether they should join a labor organization, is preempted by the NLRA;

2. Declaring that SB 519, as applied to private sector employers engaging in mandatory communications with non-management employees about whether they should join a labor organization, violates the First Amendment to the United States Constitution;

3. Enjoining Defendants from taking any action to enforce SB 519 against Plaintiffs or their members, including any attempt by Local 296 to publicize alleged employer violations of SB 519;

Jackson Lewis LLP
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

4. Awarding Plaintiffs their reasonable costs and disbursements; and

5. Granting such other relief that the court finds just and equitable.

DATED: December 22, 2009

JACKSON LEWIS LLP

By: _____
Scott Oborne, OSB #062333
Heidi Guettler, OSB #940702
Mark A. Crabtree, OSB #015070
Jackson Lewis, LLP
806 SW Broadway, Ste. 400
Portland, OR 97205
P: (503) 229-0404 F: (503) 229-0405
Attorneys for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13