**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
**Heidi Guettler, OSB #940702**
guettleh@jacksonlewis.com
**Mark A. Crabtree, OSB #015070**
crabtreem@jacksonlewis.com
Jackson Lewis, LLP
806 SW Broadway, Ste. 400
Portland, OR 97205
(503) 229-0404
(503) 229-0405 (facsimile)
ATTORNEYS FOR PLAINTIFFS

**Robin S. Conrad** (*pro hac vice*)
rconrad@uschamber.com
**Shane B. Kawka** (*pro hac vice*)
skawka@uschamber.com
National Chamber Litigation Center, Inc.
1615 H Street, NW
Washington, DC 20062
P: (202) 463-5337 F: (202) 463-5346
OF COUNSEL FOR CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| ASSOCIATED OREGON INDUSTRIES and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,<br><br>      Plaintiffs,<br><br>vs.<br><br><br>BRAD AVAKIAN, Individually and as Commissioner of the Oregon Bureau of Labor and Industries, and LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 296,<br><br>      Defendants. | Case No.:  3:09-CV-1494-MO<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br><br><br><br>__Oral Argument Requested__ |

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
Case No. 3:09-CV-1494-MO

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.   Employer Speech Rights Are Protected Under the NLRA and the
        First Amendment ................................................................................... 2

    B.   The NLRB's Regulation of Captive Audience Meetings ....................................... 4

    C.   Organized Labor's Efforts to Ban Captive Audience Meetings ........................... 6

    D.   SB 519 Prohibits Employers From Conducting Mandatory
        Communications To Discuss Views On Unionization .......................................... 7

    E.   Plaintiffs' Member-Employers Will Either Violate or Refrain from
        Violating SB 519 ................................................................................. 8

    F.   Commissioner Avakian Is Charged With Enforcing SB 519 .............................. 10

    G.   Laborers' Local 629 Is Poised To Enforce SB 519 ............................................ 11

III. ARGUMENT ...................................................................................................... 12

    A.   Summary Judgment Standard ................................................................ 12

    B.   Plaintiffs and Their Members Possess Standing to Challenge an
        Unconstitutional Law ......................................................................... 13

    C.   Plaintiffs' Claims Are Ripe for Review .............................................................. 15

    D.   SB 519 Is Preempted by Federal Labor Law ....................................................... 16

        1.   *Garmon* Preemption Prohibits States from Regulating Any
            Conduct Arguably Protected or Prohibited by the NLRA ....................... 16

        2.   *Machinists* Preemption Creates a Zone Free of Governmental
            Interference, in Which Employers May Utilize Economic
            Weapons to Communicate Views on Unionization ................................ 18

        3.   SB 519 Impermissibly Regulates Employers' Economic Weapons ......... 19

    E.   SB 519 Infringes Plaintiffs' Member-Employers' First Amendment Right
        to Free Speech .................................................................................. 21

        1.   SB 519 Places a Prior Restraint on Speech .............................................. 21

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

        2.       SB 519 is an Unconstitutional Content-Based Regulation ....................... 22

IV.      CONCLUSION............................................................................................................. 23

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

# TABLE OF AUTHORITIES

## Cases

*Aeroground, Inc. v. City of San Francisco*, 170 F. Supp. 2d 950 (N.D. Cal. 2001) .................... 19

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933
(9th Cir. 1987) .................................................................................................................. 17

*Amalgated Ass'n of St., Elex Ry & Motor Coach of Am. et al. v. Lockridge*,
403 U.S. 274 (1971) .......................................................................................................... 21

*Associated General Contractors of California, Inc. v. Coalition for Economic Equity*,
950 F.2d 1401 (9th Cir. 1991) .......................................................................................... 15

*Babcock v. Wilcox Co.*, 77 N.L.R.B. 577 (1948) .................................................... 1, 3, 4

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963) .................................................. 25

*Building & Constr. Trades Council v. Associated Builders and Contractors of Mass.*,
507 U.S. 218 (1993) ..................................................................................................... 22, 23

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003) ....................... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 12

*Chamber of Commerce v. Brown*, __ U.S. __, 128 S. Ct. 2408 (2008) .................... 20, 22

*City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001) .................................. 18

*City of Madison Jt. School Dist. No. 8 v. Wisconsin Employment Relations Comm.*,
429 U.S. 167 (1976) .......................................................................................................... 24

*City of New York v. F.C.C.*, 486 U.S. 57 (1988) .......................................................... 19

*Clark Bros. Co.*, 70 N.L.R.B 802 (1946) ........................................................................ 2

*Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001) ...... 17

*Consolidated Edison Co. of New York, Inc. v. Pub. Serv. Comm. of New York* , 447 U.S.
530 (1980) ......................................................................................................................... 25

*Converters Gravure Serv., Inc.*, 164 N.L.R.B 397 (1967) ........................................... 6

*Doe v. Bolton*, 410 U.S. 179 (1973) ............................................................................. 17

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) .............................................................. 18

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

*F.W. Woolworth Co.*, 251 N.L.R.B. 1111 (1980) ....................................................................... 4, 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ........................... 16

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).................................. 19, 20, 21

*Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986) ................................................ 20

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ........................ 15

*International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*,
427 U.S. 132 (1976) ............................................................................................................... passim

*Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966) ...................................................... 3, 22

*Litton Sys., Inc.*, 173 N.L.R.B. 1024 (1968) ................................................................................. 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 14

*Metro Life Ins. Co. v. Mass.*, 471 U.S. 724 (1985) ..................................................................... 20

*Near v. Minnesota*, 283 U.S. 697 (1931) .................................................................................... 25

*NLRB v. Continental Oil Co.*, 159 F.2d 326 (10th Cir. 1947) ...................................................... 5

*NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969) ............................................................. 3, 5, 24

*NLRB v. Insurance Agents' Int'l Union*, 361 U.S. 477 (1960) .................................................... 21

*NLRB v. Lenkurt*, 438 F.2d 1102 (9th Cir. 1971) ...................................................................... 22

*NLRB v. TRW-Semiconductors, Inc.*, 385 F.2d 753 (9th Cir. 1967)............................................ 22

*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969)................................................................... 19

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983)................................................................................................................... 18

*Peerless Plywood*, 107 N.L.R.B. 427 (1953).......................................................................... 6, 26

*Ridgewood Mgmt. Co., Inc.*, 171 N.L.R.B 151 (1968) ......................................................... 4, 5, 7

*Sable Commc'ns of California, Inc. v. FCC*, 492 U.S. 115 (1989) .............................................. 26

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

*San Francisco County Democratic Cent. Committee v. March Fong Eu*, 826 F.2d 814 (9th Cir. 1987 ............................................................................................................................ 18

*Schult Trailers*, 28 N.L.R.B 975 (1941) ............................................................................ 2

*Southern Colo. Power Co.*, 13 N.L.R.B 699 (1939) ........................................................... 2

*Steffel v. Thompson*, 415 U.S. 452 (1974) ........................................................................ 17

*Teamsters Local 20 v. Lester Morton Trucking Co.*, 377 U.S. 252 (1964) ...................... 23

*Thomas v. Collins*, 323 U.S. 516 (1945) ............................................................................. 3

*U.S. Chamber of Commerce v. Reich*, 74 F.3d 1332 (D.C. Cir. 1996) ...................... 21, 22

*United Technologies Corp.*, 274 N.L.R.B. 1069 (1985), *aff'd* 789 F.2d 121 (2d Cir. 1986) ......... 4

**Statutes**

28 U.S.C. § 2202 ................................................................................................................ 23

29 U.S.C. § 157 ..................................................................................................... 1, 2, 5, 20

29 U.S.C. § 158(c) ...................................................................................................... passim

ORS 659.758 ............................................................................................................... passim

**Other Authorities**

H.R. 3619, 108th Cong. (2003); S. 1925, 108th Cong. (2003) ........................................... 6

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................... 12

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

# I. INTRODUCTION

In 2009, Oregon enacted Oregon Laws, Chapter 658, which emerged from the legislature as SB 519, and which is now codified at ORS 659.780 and 659.785 (hereinafter "SB 519"). The law effectively prohibits Oregon employers from conducting any mandatory communication with employees to communicate views about whether employees should join a union. SB 519 became effective on January 1, 2010.

By impeding employers from communicating with employees about unionization, SB 519 violates Plaintiffs' member-employers' rights guaranteed by the National Labor Relations Act ("NLRA" or "Act"). Section 8(c) of the NLRA establishes a zone of protected speech which includes the right to communicate views about whether employees should join a union. Congress intended this free speech right to remain largely unabridged, although the National Labor Relations Board ("NLRB" or "Board") has imposed limited restrictions to protect employees' corresponding associational rights under Section 7 of the NLRA. SB 519 substantially alters the balance of labor relations in Oregon and interferes with the Board's jurisdiction. As such, the law is preempted under two complementary NLRA preemption doctrines.

SB 519 also infringes upon Plaintiffs' member-employers' free speech rights under the First Amendment to the United States Constitution. SB 519 is a classic prior restraint – a law that effectively prohibits a form of speech before it occurs. Oregon employers have a Constitutional right to speak freely to employees about the drawbacks of a unionized workplace without the threat of reprisal. SB 519 tramples on that right and thus violates the First Amendment.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 1

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Plaintiffs possess standing against each Defendant and the issues before the Court are ripe for review. As such, Plaintiffs seek a declaration that SB 519 is preempted by federal law and unenforceable by the Defendants. Summary judgment is appropriate on this declaratory action because no material questions of fact exist and Plaintiffs are entitled to judgment as a matter of law.

## II. BACKGROUND

### A. Employer Speech Rights Are Protected Under the NLRA and the First Amendment

The National Labor Relations Act of 1935 confers on employees a right to organize, bargain collectively, and engage in concerted activities and other mutual aid or protection. 29 U.S.C. § 157 ("Section 7"). As originally enacted, the Act was designed to foster collective bargaining by creating an assortment of employee and union rights. Prior to 1946, the NLRB required employers to maintain neutral in the face of union organizing, holding that any negative statements concerning unionization constituted interference with employees' Section 7 rights. *See, e.g., Schult Trailers*, 28 N.L.R.B 975 (1941); *Southern Colo. Power Co.*, 13 N.L.R.B 699 (1939). Specifically, the Board prohibited employers from compelling employees to assemble during work time for purposes of listening to the employer's views on unions. *Clark Bros. Co.*, 70 N.L.R.B 802, 804-805 (1946) (so-called captive audience speeches interfered with employees' Section 7 rights).

In 1945, the Supreme Court recognized for the first time that employer speech regarding unions could fall within First Amendment protections. *See Thomas v. Collins*, 323 U.S. 516, 537 (1945) ("[The right] to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly."). Thereafter, a campaign emerged to amend the NLRA by adding language

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

recognizing employer speech rights. In 1947, Congress passed the Taft Hartley Act, which added Section 8(c) to the Act.

Section 8(c) provides: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). Section 8(c) was added "in order to insure both to employers and labor organizations full freedom to express their views to employees on labor matters." S. Rep. No. 80-105, at 23-24 (1947).

Section 8(c) "firmly establishe[s]" that "an employer's free speech right to communicate his views to his employees cannot be infringed by . . . the Board." *Babcock v. Wilcox Co.*, 77 N.L.R.B. 577, 578 (1948). *See also Linn v. United Plant Guard Workers*, 383 U.S. 53, 59-64 (1966) ("We acknowledge that the enactment of 8(c) manifests a congressional intent to encourage free debate on issues dividing labor and management."); *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (employers may express "any of [their] general views about unionism or any of [their] specific views about a particular union . . . ."); *United Technologies Corp.*, 274 N.L.R.B. 1069, 1074 (1985), *aff'd* 789 F.2d 121 (2d Cir. 1986) ("[A]n employer has a fundamental right, protected by Section 8(c) of the Act, to communicate with its employees"). In *United Technologies Corp.*, the Board recognized:

> An employer is not required to watch passively as a union conducts 'public' negotiations through one-sided distributions which denigrate the employer, raise expectations, and engender fear that the employer's position is sinister or unfair. Furthermore, we believe that free and open discussion by all parties to the collective-bargaining process affords the best chance for successful conclusion of negotiations and creates the most favorable climate for successful bargaining. Indeed, employees ought to be fully informed as to all issues relevant to collective-bargaining negotiations and the parties' positions as to those issues. We believe employees are fully capable of evaluating the relative merits of those positions for themselves.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 3

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

274 N.L.R.B. at 1074.

For more than 50 years, the Board and courts have consistently held that any rule which "deprives the employer of the right to confer with his employees about any important matter, including unionization, is to deprive him of the freedom of speech specifically guaranteed by the Constitution and by Section 8(c) of the Act." *E.g., Babcock & Wilcox Co.*, 77 N.L.R.B 577, 578 (1948); *NLRB v. F.W. Woolworth Co.*, 214 F.2d 78, 83 (6th Cir. 1954); *Ridgewood Mgmt. Co., Inc.*, 171 N.L.R.B 148, 151 (1968).

## B.     The NLRB's Regulation of Captive Audience Meetings

The speech protections created by Section 8(c) are not absolute and the NLRB retains limited authority to balance employers' free speech rights with the prohibition against interference, restraint, or coercion of employees found in Section 7 of the Act. *Gissel Packing Co.*, 395 U.S. at 617 ("[A]n employer's rights cannot outweigh the equal rights of the employees to associate freely, as those rights are embodied in § 7 and protected by § 8(a)(1) and the proviso to § 8(c)."). *See also NLRB v. Continental Oil Co.*, 159 F.2d 326, 329 (10th Cir. 1947) ("[T]he task of prescribing the boundary of free speech in the field of industrial relations [requires] reconciling competing interests . . . [and] requires [the NLRB] to draw the line in the public interest").

The balance of competing rights comes to a head in the context of captive audience meetings. A captive audience meeting within the traditional labor context is a meeting held on company time to express the employer's views about the drawbacks of a unionized workplace. Worker attendance at such meetings is mandatory and workers can be disciplined or fired for refusing to attend. Workers can also be prohibited from asking questions or speaking during the meeting. Unquestionably, captive audience meetings are a highly effective means of persuading

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 4

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

employees to reject union organizing efforts. While recognizing that "an element of compulsion is present in all 'captive audience' speeches," the NLRB has consistently held that such meetings are protected activity under Section 8(c) and the First Amendment. *Ridgewood Mgmt. Co., Inc.*, 171 N.L.R.B 148, 151 (1968).

For the first time in *Babcock & Wilcox Co.*, 77 N.L.R.B at 578, the Board held that the NLRA did not prohibit employers from compelling employees to listen to non-coercive speeches about the drawbacks of a unionized workplace or negative information about a particular union. *Id.* The Board's ruling in *Babcock* has now been the law throughout the country for more than 50 years. *See e.g., Converters Gravure Serv., Inc.*, 164 N.L.R.B 397, 406 (1967) ("[I]t is not unlawful to compel employees during working hours to attend a meeting where employer antipathy to the Union is expounded."); *F.W. Woolworth Co.*, 251 N.L.R.B. 1111, 1113 (1980) (An employer may "attempt to further its antiunion campaign by conducting a captive audience meeting.").

In *Peerless Plywood*, 107 N.L.R.B. 427 (1953), the NLRB had occasion to place specific limitations on captive audience meetings. In *Peerless*, the Board prohibited employers from making election speeches on company time within 24 hours before a Board election. *Id.* at 429. The Board concluded that last-minute speeches tended "to create a mass psychology which . . . gives an unfair advantage to the [speaking] party," and "to destroy freedom of choice and establish an atmosphere in which a free election cannot be held." *Id.* at 429-30. In an attempt not to overly circumscribe employers' free speech interests, the Board also noted that the *Peerless* rule does not prohibit the use of "any other legitimate campaign propaganda or media," or even speeches within 24 hours of an election provided "employee attendance is voluntary and on the employees' own time." *Id.* at 430.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 5

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Absent the type of narrow restriction recognized in *Peerless,* employees have no right to avoid attending compulsory meetings. *See Litton Sys., Inc.*, 173 N.L.R.B. 1024, 1030 (1968) (workers have "no statutorily protected right to leave a meeting which the employees were required by management to attend on company time and property to listen to management's noncoercive antiunion speech designed to influence the outcome of a union election."). Thus, an employer does not violate the NLRA by "suggesting to some employees that nonattendance might put their jobs in jeopardy." *Ridgewood Mgmt. Co., Inc.*, 171 N.L.R.B at 151. Similarly, an employer does not commit an unfair labor practice by disciplining or terminating an employee who refuses to attend compulsory noncoercive antiunion speeches during working hours. *See, e.g., Litton Sys., Inc.*, 173 N.L.R.B. at 1030.

C.     **Organized Labor's Efforts to Ban Captive Audience Meetings**

Organized labor has long objected to employers' ability to conduct mandatory meetings to rebut union rhetoric and advise employees about the drawbacks of a unionized workplace. In November 2003, organized labor successfully lobbied Congressional Members to introduce legislation aimed at countering captive audience meetings. The bill, known as the Employee Free Choice Act ("EFCA"), would have amended the NLRA to largely displace the current NLRB election process. *See* H.R. 3619, 108th Cong. (2003); S. 1925, 108th Cong. (2003). Witnesses who testified at congressional hearings on EFCA cited pre-election captive audience meetings as the type of supposed employer coercion that chills organizing campaigns. *Bonior Calls For Labor Law Reform to Fix Problems in Organizing Drives*, Daily Lab. Rep. (BNA), Mar. 11, 2004, at AA-2 (quoting AFL-CIO President John J. Sweeney).

To date, EFCA remains stalled in Congress. Undeterred by the lack of congressional action, organized labor has resorted to a state-by-state attack. The AFL-CIO drafted template

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 6

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

legislation which it named the "Worker Freedom Act" ("WFA"). The WFA effectively prohibits employers from conducting mandatory meetings to communicate views about whether employees should join a union. To date, versions of the WFA have been introduced in over a dozen different states. In 2009, however, Oregon became the first state in the country to pass into law a version of the AFL-CIO bill.

**D.** **SB 519 Prohibits Employers From Conducting Mandatory Communications To Discuss Views On Unionization**

SB 519, as codified at ORS 659.780 -- 659.785, provides in relevant part:

> An employer . . . may not discharge, discipline or otherwise penalize or threaten to discharge, discipline or otherwise penalize or take any adverse employment action against an employee:
>
> (a) Because the employee declines to attend or participate in an employer-sponsored meeting or communication with the employer . . . if the primary purpose of the meeting or communication is to communicate the opinion of the employer about . . . political matters.

ORS 659.785(1). "Political matters" are defined to include "the decision to join, not join, support or not support any lawful political or constituent group or activity." ORS 659.780(5). A "constituent group," in turn, is defined to include a labor organization. ORS 659.780(1). In short, the law prohibits Oregon employers from compelling employees to attend meetings or otherwise communicate if the primary purpose of the communication is to discuss the employer's opinion on whether employees should unionize.

SB 519 also imposes an entirely new posting requirement, requiring all subject employers to post a notice apprising employees of their right not to participate in any communication with employers about whether employees should unionize. ORS 659.758(3). SB 519 also creates a new civil cause of action, whereby employees discriminated against for refusing to communicate with employers about unionization may file civil lawsuits. Further, the statute creates a new

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 7

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

class of protected whistleblower activity for any employee who reports potential violations of SB 519's terms, including the posting requirement. ORS 659.758(1)(c). SB 519's remedies are significant; make whole relief including reinstatement, back pay, reestablishment of benefits, and attorney fees and costs. ORS 659.758(2). Moreover, the statute permits successful employees to recover treble damages. ORS 659.758(2).

**E.**     **Plaintiffs' Member-Employers Will Either Violate or Refrain from Violating SB 519**

The Chamber of Commerce of the United States of America (the "Chamber") has over 300,000 direct members, including several hundred members located in Oregon. Declaration of Steven J. Law ("Law Decl."), ¶ 2. Associated Oregon Industries ("AOI") is a member of the Chamber, and itself represents approximately 1,530 employer members in Oregon. Declaration of Jay M. Clemens ("Clemens Decl."), ¶¶ 2-3. The Chamber and AOI's membership is comprised of employers from virtually every business sector, including manufacturing, retail, hospitality, agricultural and professional services. Clemens Decl., ¶ 2; Law Decl., ¶ 2. A large majority of these employers are covered by the NLRA and each member enjoys free speech rights guaranteed by the United States Constitution. Clemens Decl., ¶ 2; Law Decl., ¶ 2. AOI and the Chamber serve their members in many areas, including advocating on behalf of members with respect to proposed labor relations legislation. Clemens Decl., ¶ 4; Law Decl., ¶ 4. Due to the sensitive nature of union organizing and the potential for members to be ostracized in the press, AOI and the Chamber also assert associational standing on behalf of their members in legal actions such as the present lawsuit that involve labor relations. Clemens Decl., ¶ 4; Law Decl., ¶ 4.

SB 519 will significantly impact countless Oregon employers, including AOI and Chamber members. Many employers will opt to comply with SB 519 by posting a notice

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 8

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

advising employees that Oregon employers are not permitted to hold captive audience meetings. See Declaration of Robert Freres, Jr., ¶ 5. In response to union organizing, some of these same employers will opt not to hold mandatory captive audience meetings to express the company's views on unionization, foregoing rights guaranteed by the NLRA. *See, e.g.,* Declaration of Glen Golomski ("Golomski Decl."), ¶ 8. Other employers will refuse to post the required notice and/or will compel attendance at mandatory meetings to discuss unionization. *See, e.g.,* Declaration of Donald H. Adler ("Adler Decl."), ¶ 6. SB 519 puts both categories of employers in the untenable position of either forgoing federal rights to comply with Oregon law, or risking lawsuits and administrative actions by exercising protected federal rights.

These injuries are not hypothetical. One of AOI's members, BrucePac, is currently the target of an aggressive union organizing campaign undertaken by Defendant Laborers' International Union of North American, Local No. 296 ("Local 296"). Golomski Decl., ¶ 3. Over the past nine months, Local 296 has engaged in an assortment of aggressive organizing activity directed at BrucePac, including trespassing, hand billing, displaying large inflatable animals, group picketing, disseminating buttons and other union insignia, contacting employees at home, holding group meetings during evening hours away from the job site, falsifying union authorization cards, and even threatening immigration raids. Golomski Decl., ¶ 3.

Over the last six months, but prior to the effective date of SB 519, BrucePac held multiple mandatory meetings with its non-management employees to both counter union rhetoric and provide information to employees about the realities of a unionized workplace, including the requirement to pay dues, the possibility of being forced out on strike and the potential for replacing existing open-door management philosophies with the forced participation of union stewards. Golomski Decl., ¶ 5. As part of these meetings, BrucePac's executive management

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 9

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

team informed employees that the company had chosen not to support the union's efforts and believes that a non-union workplace benefits both workers and the company. Golomski Decl., ¶ 4. To ensure that all employees have the benefit of hearing the employer's views, these meetings have been mandatory. Golomski Decl., ¶ 5.

Local 296's ongoing organizing activity, coupled with the BrucePac's continuing need to counter union rhetoric and communicate its own views about the negative aspects of a unionized workplace, have created an environment in which it is vitally important for BrucePac to continue to hold mandatory meetings on the subject of whether employees should vote to join a labor organization. Under SB 519, however, BrucePac is precluded from holding these mandatory meetings. ORS 659.785(1)(a). Moreover, the company is legally required to post a notice advising employees of their right to avoid any such communications. ORS 659.785(3).

SB 519's impact on BrucePac is abundantly clear. Presently, BrucePac has opted to forego mandatory meetings, due in large part of SB 519. Golomski Decl., ¶ 8. This decision significantly increases the likelihood that BrucePac's workforce will make an ill informed decision to select a union as its bargaining representative. BrucePac's alternative could create dire consequences. By continuing to hold mandatory meetings, the company would expose itself to the risks of a private lawsuit under ORS 659.785(2), as well as administrative enforcement actions. Golomski Decl., ¶¶ 8-9. *See also, e.g.,* Adler Decl., ¶ 5.

**F.**    **Commissioner Avakian Is Charged With Enforcing SB 519**

Defendant Avakian is currently serving as Commissioner of the Oregon Bureau of Labor and Industries ("BOLI"). As Commissioner, Avakian is statutorily required to enforce all laws regulating the employment of adults, including all laws enacted for the protection of employees. ORS 651.050. SB 519, which creates a broad new statutory class of wrongful terminations in

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 10

*Jackson Lewis LLP*
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Oregon, is a law enacted to protect employees. Oregon Revised Statute 651.060(1) authorizes the Commissioner to investigate alleged violations of any law within his purview. Oregon Revised Statute 651.060(1) and Oregon Administrative Rule 839-026-0020 empower the Commissioner to issue subpoenas *ad testificandum* and subpoenas *duces tecum* as part of executing his enforcement obligations.

In his Answer, Defendant Avakian acknowledged that he has the authority to enforce SB 519. Def. Avakian's Answer, ¶ 7. Further, Defendant Avakian argues that SB 519 is not preempted by federal law. *Id.* ¶ 27. Defendant Avakian has not disclaimed authority to enforce SB 519, or indicated that Plaintiffs' employer-members are safe from investigation or administrative findings.[1]

## G.    Laborers' Local 629 Is Poised To Enforce SB 519

If BrucePac exercises its federal rights and holds captive audience meetings to counter Local 629's rhetoric and provide its employees with the company's views on unionziation, BrucePac fears Local 629 will use the issue to publicly accuse BrucePac of violating employees' right to be free from so-called employer coercion. BrucePac also reasonably fears that Local 629 will encourage any employee affected by refusing to attend a mandatory meeting to file a civil action or administrative charge based on SB 519.

Fearing that Local 296 would attempt to use SB 519 to its advantage after January 1, 2010, BrucePac sent the union a letter seeking Local 296's agreement that it would not: (1) distribute any handbills regarding the company's alleged violations of SB 519; (2) allege in any

---

[1]    If an employer chooses not to post SB 519's required notice, it may be particularly susceptible to administrative enforcement of SB 519's terms. It is entirely unclear who, other than BOLI, would be in a position to enforce the workplace posting requirement regarding SB 519. At least one of Plaintiffs' members has chosen to not post a notice advising employees of their rights under SB 519 on the grounds that SB 519 violates federal law. Adler Decl., ¶ 6.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 11

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

meeting or other form of communication that the company has violated SB 519; (3) encourage

any employee to file a civil action under SB 519 against the company; (4) file any lawsuit on

behalf of an employee against the company alleging a violation of SB 519; or (5) file an

administrative complaint with BOLI against the company alleging a violation of SB 519.

Golomski Dec ¶ 7.  The Union responded that it would only forego such conduct until such time

as this Court enters a substantive ruling on the merits of Plaintiffs' Complaint.  *See* Def. Local

296's Answer, Exhibit A.  As such, BrucePac has little doubt that without this lawsuit, the union

would already be aggressively demanding the company refrain from mandatory communications

in violation of SB 519.

## III.  ARGUMENT

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party has the burden of establishing the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party makes

this showing, the nonmoving party must set forth "specific facts showing a *genuine* issue for

trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Where "the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary

judgment should be entered against "a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex*, 477 U.S. at 322.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 12

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

**B.** **Plaintiffs and Their Members Possess Standing to Challenge an Unconstitutional Law**

Plaintiffs bring this declaratory action on behalf of their private sector members who are "employers" under SB 519, who are currently experiencing union organizing activity, who anticipate experiencing union organizing activity in the future, and who engage in mandatory communications with employees about whether or not to join a labor organization. Plaintiffs, in their representational capacity, possess the requisite associational standing to challenge the application of SB 519 in the context of this declaratory action.

Plaintiffs may assert associational standing to sue in a representative capacity for injuries to their members by showing: (1) at least one member would have standing in its own right to present the claims; (2) the interests sought to be protected are germane to the associations' purposes; and (3) neither the claim asserted nor the relief requested requires that the members participate individually in the suit. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 376-379 (1977).

A declaration of one member of an association that it suffered harm, coupled with general assertions that other members would suffer similar harm, satisfies the first element. *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1406-07 (9th Cir. 1991). Here, as in *Associated General Contractors*, Plaintiffs can establish that individual association members have standing to assert claims against both Defendants, thereby satisfying the first prong of the *Hunt* test for associational standing. *See Associated Gen'l Contractors*, 950 F.2d at 1406-07; *Hunt*, 432 U.S. at 333, 341-43.

Specifically, AOI's member-employer, BrucePac, possesses the requisite standing. The company has suffered a cognizable injury vis-à-vis the Defendants and the requested declaratory judgment would effectively remedy the injury. According to the Supreme Court, "[t]o satisfy

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 13

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)). BrucePac satisfies each of these requirements.

In *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), the Court found "no question" that the plaintiffs had standing to seek declaratory and injunctive relief invalidating a federal regulation where the regulation at issue "requires them to make significant changes in their everyday business practices" and "if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions." *Id.* at 154. Here, SB 519 clearly requires BrucePac, for example, to forgo past practices and forfeit federal free speech rights. If the company does not comply with SB 519, it is subject to lawsuits and administrative actions brought or facilitated by the Defendants. The Court's declaration that SB 519 is preempted by federal law effectively resolves the existing dispute between the parties. As such, Plaintiffs' employer-members possess the necessary standing to assert the claims at issue.

Second, the interests sought to be protected are germane to Plaintiffs' respective purposes. The Chamber's mission is, in part, to advocate for its members about matters of importance to the membership, including labor relations, and to advocate on the membership's behalf when the members could be exposed to adverse actions by challenging issues individually. Law, Decl., ¶ 4. Similarly, AOI's mission is, in part, to advocate for its members with respect to labor relations when the members could be exposed to adverse actions. Clemens

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 14

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Decl., ¶ 4. Plaintiffs' attempt to remedy existing and future injuries to their members through this declaratory action is central to Plaintiffs' respective missions.

Finally, a request for declaratory and injunctive relief does not require individual participation by Chamber or AOI members. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001); *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) ("[B]ecause the [organization] seeks declaratory and prospective relief rather than money damages, its members need not participate directly in the litigation.").

## C.    Plaintiffs' Claims Are Ripe for Review

A party who "refrain[s] from engaging in planned communications and associated expenditures based upon a reasonable fear of enforcement of the enacted statute [is] sufficient injury to create a justiciable case or controversy." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir. 2003). Indeed, the very purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or breach of duty. A plaintiff need not expose itself to actual prosecution in order to challenge an unconstitutional statute. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Doe v. Bolton*, 410 U.S. 179, 188 (1973). "This is especially true in a First Amendment case because 'the sensitive nature of constitutionally protected expression.'" *San Francisco County Democratic Cent. Committee v. March Fong Eu*, 826 F.2d 814, 821 (9th Cir. 1987) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

Here, state and federal law are in direct conflict. An employer need not guess at which law to follow and suffer the consequences of guessing wrong. The Declaratory Judgment Act permits Plaintiffs an avenue to redress the existing and future harm caused by application of SB 519 to Plaintiffs' member-employers.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 15

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

Plaintiffs' request for a declaratory judgment is based entirely on the assertion that SB 519 is preempted by federal law. As such, the question for the Court's consideration is purely legal in nature. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("The question of preemption is predominantly legal."). *See also City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th Cir. 2001) (question whether states are preempted by federal law from promulgating any regulations regarding free air time for candidates did not raise ripeness issues because preemption is a question of law). If a controversy is "essentially legal in nature", it is fit for judicial decision. *Abbott Laboratories*, 387 U.S. at 149.

**D.     SB 519 Is Preempted by Federal Labor Law**

The Supremacy Clause of the federal Constitution empowers Congress to "pre-empt state laws to the extent it is believed that such action is necessary to achieve its purposes." *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988). Two labor-related preemption doctrines (*Garmon* and *Machinists*) have been recognized under the Supremacy Clause. SB 519 is preempted under both.

**1.     *Garmon* Preemption Prohibits States from Regulating Any Conduct Arguably Protected or Prohibited by the NLRA**

In *Garmon,* the Supreme Court prohibited state and local governments from regulating any activity that is "is arguably within the compass of §7 or §8 of the [NLRA]." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242-44 (1959). The Court's "arguably protected" standard has been explicitly extended beyond sections 7 and 8 of the NLRA. *See Aeroground, Inc. v. City of San Francisco*, 170 F. Supp. 2d 950, 955 (N.D. Cal. 2001) (applying *Garmon* to city regulations impacting employer rights to an election under section 9 of the NLRA). Section 9 confers to the NLRB the right to regulate conduct it deems to impact

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

employee free choice. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 767 (1969) ("We have held in a number of cases that [in section 9] Congress granted the Board a wide discretion to ensure the fair and free choice of bargaining representatives.") (internal citations omitted).

The United States Supreme Court recently clarified the breadth of *Garmon* preemption, finding the doctrine applicable to all "state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Chamber of Commerce v. Brown*, __ U.S. __, 128 S. Ct. 2408, 2412 (2008) (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)). *See also Garmon*, 359 U.S. at 243 ("We have been concerned with conflict in the broadest sense; conflict with a complex and interrelated federal scheme of law, remedy, and administration."); *Metro Life Ins. Co. v. Mass.*, 471 U.S. 724, 749 (1985) (*Garmon* preempts state regulation of "any conduct subject to the regulatory jurisdiction of the NLRB."). In short, *Garmon* preempts state regulation of "*any* conduct subject to the regulatory jurisdiction of the NLRB." *Metro. Life Ins. Co.*, 471 U.S. at 749 (emphasis added).

*Garmon* prohibits States from interfering with the NLRB's "interpretation and active enforcement" of the NLRA. *Brown*, 128 S. Ct. at 2412. As demonstrated above: (1) the NLRB has interpreted the NLRA to protect captive audience speeches and other forms of mandatory communication; and (2) the NLRB regulates such communication when necessary to protect employees' corresponding Section 7 rights. Preemption is thus triggered so long as SB 519 "arguably" interferes with the NLRB's assertion of jurisdiction. The conclusion is clear. The NLRA protects the conduct. The NLRB regulates the conduct. Oregon flatly prohibits the conduct. It is difficult to imagine a clearer case of *Garmon* preemption.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 17

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

2.    ***Machinists* Preemption Creates a Zone Free of Governmental Interference, in Which Employers May Utilize Economic Weapons to Communicate Views on Unionization**

The NLRA was enacted to "delicately structur[e] the balance of power among competing forces so as to further common ground." *Amalgated Ass'n of St., Elex Ry & Motor Coach of Am. et al. v. Lockridge*, 403 U.S. 274, 286 (1971). In light of this underlying rationale, the Supreme Court following *Garmon* recognized the need to expand existing preemption doctrines within the labor context. The Court in *Machinists* reasoned that while the NLRA neither explicitly protected nor prohibited certain types of conduct, the Act did implicitly leave to both employees and employers an area of bargaining conduct "to be controlled by the free play of economic forces. To sanction state regulation of such economic pressure deemed by the federal Act desirabl[y] . . . left for the free play of economic forces . . . is denying one party to an economic contest a weapon that Congress meant him to have available." *International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 150 (1976) ("[S]elf-help is of course also the prerogative of the employer because he, too, may properly employ economic weapons Congress meant to be unregulable.").

*Machinists* preemption is founded on "[t]he underlying rationale . . . that union and management 'proceed from contrary and to an extent antagonistic viewpoints and concepts of self-interest . . . .' The presence of economic weapons in reserve, and their actual exercise on occasion by the parties, is part and parcel of the system that the Wagner and Taft-Hartley Acts have recognized." *U.S. Chamber of Commerce v. Reich*, 74 F.3d 1332, 1334 (D.C. Cir. 1996) (quoting *NLRB v. Insurance Agents' Int'l Union*, 361 U.S. 477, 488-89 (1960)).

The Ninth Circuit has recognized that "[t]he guaranty of freedom of speech and assembly to the employer and to the union goes to the heart of the contest over whether an employee

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 18

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

wishes to join a union." *NLRB v. TRW-Semiconductors, Inc.*, 385 F.2d 753, 760 (9th Cir. 1967) (internal citation omitted). In short, "[t]he Supreme Court and this circuit are committed to the principle that debate in union campaigns should be vigorous and uninhibited . . . ." *NLRB v. Lenkurt*, 438 F.2d 1102, 1108 (9th Cir. 1971). *See also Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 62 (1966) (Section 8(c) manifests Congress' intent "to encourage free debate on issues dividing labor and management.").

Thus, states may not alter the balance of bargaining rights or regulate the economic weapons possessed by employers and unions. *See Building & Constr. Trades Council v. Associated Builders and Contractors of Mass.*, 507 U.S. 218, 226 (1993). *See also Reich*, 74 F.3d at 1337 ("No state or federal official or governmental entity can alter the delicate balance of bargaining and economic power that the NLRA establishes, whatever his or its purpose may be.").

The Supreme Court in *Brown* recently recognized that although the NLRB does regulate Section 8(c) speech within the organizing context through section 9, *Machinists* preemption still provides employers with an avenue for relief when states attempt to regulate employer speech. *Brown*, 128 S. Ct. at 2417. Specifically, the Court noted that the NLRB has "policed a narrow zone of speech to ensure free and fair elections . . . ." *Id.* That said, the Court also noted that Congress has not conferred to the NLRB the right to regulate employer speech more generally. *Id.* Rather, non-coercive speech is most often meant to be a zone free from all regulation, whether state or federal. *Id.*

### 3. SB 519 Impermissibly Regulates Employers' Economic Weapons

SB 519 prohibits employers from holding captive audience meetings, or otherwise communicating their views regarding unionization, outside a "strictly voluntary" context. SB

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

519 contains no similar limitations on a union's ability to present its views.  By imposing

restrictions on employers' rights, while allowing unions free reign, SB 519 effectively disrupts

"Congress' intentional balance between the uncontrolled power of management and labor."  *See*

*Building & Constr. Trades Council*, 507 U.S. at 226.  This disruption is the foundation of

*Machinists* preemption.

In *Teamsters Local 20 v. Lester Morton Trucking Co.*, 377 U.S. 252 (1964), for example,

the Supreme Court addressed whether a state could regulate conduct which did not violate any

express provisions of the NLRA, yet disrupted the balance between unions and employers.  The

state law at issue prohibited unions from discouraging customers from patronizing an employer

during negotiations.  In finding the law preempted, the Court held: "This weapon of self-help . . .

formed an integral part of the petitioner's effort to achieve its bargaining goals . . . .  Allowing its

use is a part of the balance struck by Congress between the conflicting interests of the union, the

employees, the employer and the community."  *Id*. at 259.  The Court noted that allowing such

regulation would "upset the balance of power between labor and management expressed in our

national labor policy."  *Id*. at 260.

In the present context, Congress has specifically declared that non-coercive employer

speech regarding unions is intended to be largely unregulated.  Indeed, section 8(c) is a

congressional pronouncement that the NLRB cannot regulate non-coercive employer speech.

*See Gissel Packing Co.*, 395 U.S. at 618.  Because Congress expressly left employers free to

engage in non-coercive speech under section 8(c), Oregon is precluded from regulating this

activity through SB 519.  By limiting employers to "strictly voluntary" presentations rather than

mandatory meetings, Oregon is impermissibly regulating employer speech, thus triggering

*Machinists* preemption.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 20

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

### E. SB 519 Infringes Plaintiffs' Member-Employers' First Amendment Right to Free Speech

By creating a broad new statutory class of wrongful termination, the Oregon legislature has effectively regulated the content of employer speech. Employers remain free to compel employees to attend a variety of meetings (e.g, anti-harassment training). The legislature has determined, however, that employers may not communicate their views on unions in the same mandatory context. Such content-based regulation violates the First Amendment to the U.S. Constitution.

#### 1. SB 519 Places a Prior Restraint on Speech

By restricting prospective speech on an entire topic, SB 519 exacts a prior restraint on covered employers. *City of Madison Jt. School Dist. No. 8 v. Wisconsin Employment Relations Comm.*, 429 U.S. 167, 176-177 (1976) (commission's order prohibiting employees from speaking at meetings of the Board of Education regarding matters subject to collective bargaining held to be unlawful prior restraint). Any system of prior restraint bears a "heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963).

Here, SB 519 is a classic prior restraint – a law that prohibits speech before it takes place. SB 519's main purpose is to suppress an employer's speech on certain subjects. Allowing, under SB 519, "an aggrieved employee" to bring a charge that the employer spoke improperly at a mandatory meeting, and allowing that judge to award "all appropriate relief" is exactly the type of regulation that has been struck down as unconstitutional "censorship." *See Near v. Minnesota*, 283 U.S. 697 (1931) (holding a statute, that provided that a person who published a "malicious and defamatory newspaper" was guilty of nuisance and may be enjoined, was a prior

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 21

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

restraint of the First Amendment). SB 519 is exactly the type of prior restraint the Supreme

Court has struck down as unconstitutional – as it should be done here.

## 2. <u>SB 519 is an Unconstitutional Content-Based Regulation</u>

"The First Amendment's hostility to content-based regulation extends not only to

restrictions on particular viewpoints, but also to prohibition of public discussion of an entire

topic." *Consolidated Edison Co. of New York, Inc. v. Pub. Serv. Comm. of New York* , 447 U.S.

530, 537 (1980) (rejecting the idea that since the law restrains views on both sides of the debate,

it is content-neutral). *See also Rosenberger v. University of Virginia*, 515 U.S. 819, 831-832

(1995) ("If the topic for debate is, for example, racism, then exclusion of several views on that

problem is just as offensive to the First Amendment as the exclusion of only one."). SB 519

does not restrict employers from having mandatory meetings to talk about staffing issues,

holiday parties, or anti-harassment training and policies– however, it does prohibit employers

from forcing employees to attend meeting where "political matters" are discussed. A content-

based regulation of constitutionally protected speech is presumptively unconstitutional; to be

valid, it must use the least restrictive means to further a compelling state interest. *Sable

Commc'ns of California, Inc. v. FCC*, 492 U.S. 115 (1989).

The proscriptions contained in SB 519 are clearly *not* the least restrictive means of

regulating employer speech. As discussed above, the NLRB has adopted and implemented lesser

restrictions on employers for more than 50 years. *See, e.g., Peerless*, 107 N.L.R.B. 427

(upholding restriction on captive audience meetings 24-hours before election). SB 519 is an

overbroad, content-based regulation that conflicts with federal law.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 22

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)

# IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment should be granted. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202, the Court should enter an order that SB 519 is preempted by the NLRA and the First Amendment to the U.S. Constitution.

DATED: February 12, 2010                     JACKSON LEWIS LLP


                                             By: _____s/ Scott Oborne_____
                                                  Scott Oborne, OSB #062333
                                                  Heidi Guettler, OSB #940702
                                                  Mark A. Crabtree, OSB #01507
                                                  Attorneys for Plaintiffs


                                             NATIONAL CHAMBER LITIGATION
                                             CENTER, INC.

                                             Robin S. Conrad (*pro hac vice*)
                                             Shane B. Kawka (*pro hac vice*)
                                             Of Counsel for Chamber of Commerce of the
                                             United States of America

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT -
Case No. 3:09-CV-1494-MO
Page - 23

**Jackson Lewis LLP**
806 SW Broadway, Ste. 400
Portland OR 97205
(503) 229-0404
(503) 229-0405 (fax)