JOHN R. KROGER
Attorney General
JOHN J. DUNBAR  #842100
NATHAN B. CARTER #073461
Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4793
Email: John.Dunbar@doj.state.or.us
         Nathan.Carter@doj.state.or.us

Attorneys for Defendant Brad Avakian

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ASSOCIATED OREGON INDUSTRIES and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, | Case No. 3:09-CV-1494-MO |
| Plaintiffs, | DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BRAD AVAKIAN, Individually and as Commissioner of the Oregon Bureau of Labor and Industries, and LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 296, | |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ...............................................................................................2

      A.    SB 519 creates a private right of action for workers who are penalized or
            fired for declining to attend "captive audience" meetings ....................2

      B.    The purpose of SB 519 is to protect workers from being fired, or
            penalized, for avoiding unwanted or offensive communications...........3

      C.    Commissioner Avakian will not enforce SB 519 ...................................4

III.  SUMMARY JUDGMENT STANDARDS ......................................................6

IV.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ...........7

      A.    Plaintiffs present no material facts to support their claims that they have
            standing, or that the case is ripe...........................................................8

      B.    This Court lacks subject matter jurisdiction over plaintiff's claims......10

            1.    Plaintiffs lack standing to sue Commissioner Avakian............10

            2.    Any cause of action against Commissioner Avakian is not ripe..............14

      C.    The NLRA does not preempt SB 519....................................................18

            1.    *Garmon* does not preempt SB 519 .........................................19

                  a.    The conduct covered by SB 519 is not arguably protected
                        or prohibited by the NLRA...........................................20

                  b.    Plaintiffs' arguments to the contrary are erroneous.......22

            2.    *Machinists* does not preempt SB 519 .....................................25

                  a.    SB 519 sets a minimal state-law standard for an employer's
                        ability to discipline or discharge employees...................25

                  b.    Plaintiffs' arguments to the contrary are erroneous.......28

      D.    SB 519 does not violate the First Amendment .....................................29

V.    CONCLUSION ...............................................................................................33

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

## TABLE OF AUTHORITIES

**Cases**

*1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108 (3d Cir. 1993) ..........................12

*911 Management, LLC v. United States*, 657 F.Supp.2d 1186 (D. Or. 2009)................................7

*Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840 (9th Cir. 2007)................................................................................................................................15, 16

*Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979 (9th Cir. 2004) ...............26

*Barnes v. Stone Container Corp.*, 942 F.2d 689 (9th Cir. 1991)............................................27, 28

*Bronson v. Swensen*, 500 F.3d 1099 (10th Cir. 2007)............................................................12, 13

*Brown v. Transcon Lines*, 284 Or. 597 (1978) ..............................................................................3

*Building & Constr. Trades Council v. Assoc. Builders & Contractors of Mass.*, 507 U.S. 218 (1993) ....................................................................................................................19

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)........................14, 16

*Chamber of Commerce v. Brown*, ___ U.S. ___, 128 S. Ct. 2408 (2008)...................23, 25, 28, 29

*Chamber of Commerce v. Edmondson*, ___ F.3d ___, 2010 U.S. App. LEXIS 2248 (10th Cir. 2010) ......................................................................................................................12

*Ching Yee Wong v. Napolitano*, 654 F. Supp. 2d 1184 (D. Or. 2009) ....................................10, 12

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ...............................................................18

*Cohen v. California*, 403 U.S. 15 (1971)....................................................................................31

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 475 F. Supp. 2d 952 (C.D. Cal. 2006) ................................................................................................................5

*Cornwell v. Electra Central Credit Union*, 439 F.3d 1018 (9th Cir. 2006) ...................................8

*DCS Sanitation Management, Inc. v. Castillo*, 435 F.3d 892 (8th Cir. 2006), *cert den*, 549 U.S. 882 (2006) ................................................................................................................32

*Dillingham Construction N.A., Inc. v. County of Sonoma*, 190 F.3d 1034 (9th Cir. 1999) ....25, 26

*Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270 (1st Cir. 1993), *cert den*, 508 U.S. 981 (1993) ......................................................................................................................................32

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ...............................................................31

*Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290 (1977)............................................20

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987)..........................................................25, 32

Page ii

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ........................................................... 12

*Frisby v. Schultz*, 487 U.S. 474 (1988) .......................................................................... 30

*Hill v. Colorado*, 530 U.S. 703 (2000) ..................................................................... 3, 30

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...................................................................... 18

*Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001) ................................... 10, 12, 13, 14

*Hospital Cristo Redentor, Inc. v. NLRB*, 488 F.3d 513 (1st Cir. 2007) ......................... 21

*Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133 (9th Cir. 2009) ...................... 16

*Katz v. United States*, 389 U.S. 347 (1967) ..................................................................... 3

*Lake Butler Apparel Co. v. Sec'y of Labor*, 519 F.2d 84 (5th Cir. 1975) ................... 6, 18

*Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992) .............................................................. 26

*Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966) ...................................... 20, 28

*Litton Systems, Inc.*, 173 NLRB 1024 (1968) .......................................................... 21, 23

*Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976) ........................................................................................................... passim

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) ......................... 26, 29

*Milwaukie Deputy Sheriffs' Assoc. v. Clarke*, 2009 WL 4408197 at *5 (7th Cir. 2009) .............. 31

*Morales v. Trans World Airlines*, 504 U.S. 374 (1992) ................................................. 18

*Muskrat v. United States*, 219 U.S. 346 (1911) .............................................................. 10

*Nat'l Broadcasting Co. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995) ........................... 27, 28

*Ness v. Hocks*, 272 Or. 210 (1975) ................................................................................ 22

*New York Telephone Co. v. New York Dept. of Labor*, 440 U.S. 519 (1979) ............... 29

*NLRB v. Prescott Indus. Prods. Co.*, 500 F.2d 6 (8th Cir. 1974) ................................. 21

*Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ........................... passim

*Oelke v. Costco Wholesale Corp.*, 2005 WL 1173311 at *2 (D. Or. 2005) ..................... 3

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ........................................... 11, 12, 13

*Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir.1987), *cert den*, 486 U.S. 1054 (1988) ................................................................................................................................ 26

*Peerless Plywood Co.*, 107 NLRB 427 (1953) ......................................................... 24, 25

Page iii

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), *cert den*, ___ S.Ct. ___, 2010 WL 58771 (Jan. 11, 2010) ..................................................................................................7

*Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772 (9th Cir. 2001), *cert den*, 534 U.S. 1020 (2001) ...............................................................................................................20, 21

*Ridgewood Mgmt. Co., Inc.*, 171 NLRB 148 (1968) ................................................30, 31

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ..............................................................32

*Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486 (M.D. Fla. 1991) ...........31

*Rowan v. U.S. Post Office Dept.*, 397 U.S. 728 (1970) ..................................................30

*Rumsfeld v. FAIR, Inc.*, 547 U.S. 47 (2006) ..................................................................32

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) ....................passim

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ..............12

*Scope Pictures v. City of Kansas City*, 140 F.3d 1201 (8th Cir. 1998) .........................17

*Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180 (1978) ...........................................................................................................passim

*St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232 (3d Cir. 2000) ...............................................................................................................27, 28

*Stormans v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ..............................................15, 16

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000), *cert den*, 531 U.S. 1143 (2001) ......................................................................................15, 16, 17

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ................................................26

*UAW-Labor Employment & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003), *cert den*, 541 U.S. 987 (2004) ....................................................................................24

*United States v. O'Brien*, 391 U.S. 367 (1968) .............................................................32

*Valentine v. PGE Co.*, 2007 WL 4270761 at *7.......................................................3, 26

*Waste Connections, Inc. v. Metropolitan Service Dist.*, 2000 WL 1364253 at *4 (D. Or. 2000)..........................................................................................................................15

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ................................................................32

*Zavadil v. Alcoa Extrusions, Inc.*, 437 F.Supp.2d 1068 (D. S.D. 2006).......................22

**Statutes**

ORS 652.355 ..................................................................................................................26

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

## United States Code

15 U.S.C. § 1674(a) ............................................................................................29

29 U.S.C. § 158(a)(3) .........................................................................................21

29 U.S.C. § 158(c) ..............................................................................................23

29 U.S.C. § 2002(3) ............................................................................................29

29 U.S.C. § 623(a) ..............................................................................................29

42 U.S.C. § 12112(a) ..........................................................................................29

42 U.S.C. § 2000e-2(a)(1) ..................................................................................29

## Other Authorities

Elizabeth J. Masson, *'Captive Audience' Meetings in Union Organizing Campaigns:
   Free Speech or Unfair Advantage?*, 56 Hastings L.J. 169 (2004) ............................................28

Jack Balkin, *Some Realism About Pluralism: Legal Realist Approaches to the First
   Amendment*, 1990 Duke L.J. 375) ..........................................................................................31

## Rules and Regulations

Fed. R. Civ. P. 12(h)(3) ......................................................................................10

Fed. R. Civ. P. 56(c)(2) ........................................................................................6

Fed. R. Evid. 801(c)..............................................................................................5

Fed. R. Evid. 803(3) .............................................................................................5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

Defendant Brad Avakian, Commissioner of the Oregon Bureau of Labor and Industries (BOLI), respectfully submits this memorandum in opposition to plaintiffs' motion for summary judgment. Plaintiffs are not entitled to summary judgment because they lack standing and their claims are not ripe. Furthermore, should this Court reach plaintiffs' substantive arguments, those arguments fail on the merits. Senate Bill 519 ("SB 519") is not pre-empted by the National Labor Relations Act (NLRA), and SB 519 does not violate the First Amendment.

## I. INTRODUCTION

Plaintiffs seek an advisory opinion. Specifically, they seek declaratory and injunctive relief against Commissioner Avakian, based on a law that he will not enforce against them. SB 519, which went into effect on January 1, 2010, creates a private right of action for employees. SB 519 was enacted to address an employer practice of holding mandatory meetings at work, lecturing employees on political or religious matters outside the scope of their employment, and threatening the employees with penalties or job loss if they wish to leave. Such meetings often are referred to as "captive audience meetings." Under SB 519, if an employer fires or penalizes an employee for declining to attend such a meeting, the employee may bring an action against the employer for reinstatement, back pay, and other forms of relief.

Plaintiffs now seek declaratory and injunctive relief against Commissioner Avakian to prevent him from enforcing SB 519. Plaintiffs have the wrong defendant. SB 519 creates a private right of action, to be enforced by individual employees. Commissioner Avakian maintains that he has no authority to enforce SB 519, and that he does not intend to enforce it. BOLI staff explained as much to plaintiffs before they filed this action. Declarations and injunctions are not appropriate to prevent a defendant from taking an action in the complete absence of evidence that he will take that action. Likewise, the entry of relief against Commissioner Avakian will not stop a private plaintiff from filing suit. And to the best of the commissioner's knowledge, no private suits have been filed. Plaintiffs lack standing to pursue this action, and the action is not ripe. Furthermore, should this Court reach them, plaintiffs'

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

arguments are wrong on the merits. The NLRA does not preempt SB 519, nor does the bill violate plaintiffs' First Amendment rights. For all of those reasons, Commissioner Avakian requests that this Court deny plaintiffs' motion for summary judgment.[1]

## II. BACKGROUND

A.    **SB 519 creates a private right of action for workers who are penalized or fired for declining to attend "captive audience" meetings.**

Senate Bill 519, which took effect on January 1, 2010, provides that an employer may not "discharge, discipline or otherwise penalize" an employee who declines to participate in a meeting or communication, if the "primary purpose" of the meeting is "to communicate the opinion of the employer about religious or political matters." SB 519 § 2(1)(a). Likewise, the employer may not threaten the employee with discharge or a penalty to compel the employee's participation. *Id.* § 2(1)(b). The employer also must post a notice of employee rights under SB 519 "in a place normally reserved for employment-related notices and in a place commonly frequented by employees." *Id.* § 3.

The law is to be enforced by employees themselves. An aggrieved employee may bring an action for injunctive relief, damages, reinstatement, back pay and other remedies within 90 days of an alleged violation. *Id.* § 2(2).

The bill's effect is limited, however. It does not limit an employer's right to offer meetings or other communications on political or religious matters, as long as "attendance or participation is strictly voluntary." *Id.* § 2(4)(h). Nor does SB 519 prohibit religious or political organizations from holding mandatory meetings to communicate the employer's religious or political beliefs. *Id.* § 2(4)(d), (e). The bill also does not apply to communications that the

---

[1]    When the briefing for this case was scheduled, this Court expressed a preference that plaintiffs move for summary judgment, to limit the number of briefs that would otherwise be filed if cross-motions for summary judgment were filed by all parties. Accordingly, Commissioner Avakian files this response to plaintiffs' motion, rather than a cross-motion for summary judgment. Commissioner Avakian maintains, however, that summary judgment should be granted in his favor, based either on the lack of a case or controversy or on the merits. Should the Court deny plaintiffs' motion, Commissioner Avakian will file his own motion for summary judgment.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

employer is required by law to make, or to mandatory meetings of executive or administrative personnel. *Id.* § 2(4)(f), (g).

**B.    The purpose of SB 519 is to protect workers from being fired, or penalized, for avoiding unwanted or offensive communications.**

The terms of SB 519 reveal its purpose. SB 519 does not prohibit an employer from communicating its political or religious views to an employee. Instead, SB 519 provides the employee with a means to ensure that his or her participation in that communication is voluntary. *See* SB 519 § 2(4)(h). If the employee does not wish to participate, the employer may not fire or penalize him or her for refusing to do so. *Id.* § 2(1).

Plaintiffs misrepresent the effect of SB 519, by insisting that it "effectively prohibits a form of speech before it occurs." (Pls. Mem. Supp. MSJ, p. 1.) SB 519 prohibits coercion of an audience; it does not prohibit speech. Federal courts have long recognized that states may protect a listener's interest in avoiding unwanted communication. *Hill v. Colorado*, 530 U.S. 703, 717 n. 24 (2000) (citing *Katz v. United States*, 389 U.S. 347, 350-51 (1967)) (upholding statute barring protestors from approaching within eight feet of another person without that person's consent). SB 519 protects that interest by using a power that has long been left to the domain of the states: regulation of the terms of the employment relationship.

For example, Oregon common law recognizes an action for wrongful discharge when there is a "socially undesirable motive" for the discharge. *Brown v. Transcon Lines*, 284 Or. 597, 603-04 (1978) (wrongful discharge based on filing of workers' compensation claim). The purpose of that tort is "to protect important public policies by punishing conduct that thwarts those interests." *Oelke v. Costco Wholesale Corp.*, 2005 WL 1173311 at *2 (D. Or. 2005) (upholding action for wrongful discharge based on medical conditions). An employer may not fire an employee for "exercising an important job-related right." *Valentine v. PGE Co.*, 2007 WL 4270761 at *7 (recognizing wrongful discharge claim based on complaints of sexual harassment). Here, SB 519 establishes an important job-related right—the right to walk away

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

from unwanted communication about politics or religion—and provides workers with a cause of action, similar to the common-law tort of wrongful discharge, to protect that right.

**C.    Commissioner Avakian will not enforce SB 519.**

Plaintiffs have filed for injunctive relief against Commissioner Avakian, insisting that he is charged with its enforcement. He is not. SB 519 provides aggrieved employees with a private right of action, which may be brought by an employee who is wrongfully fired or penalized. SB 519 § 2(2). The text of SB 519 does not provide Commissioner Avakian with powers of enforcement. Nor does it provide Commissioner Avakian with the ability to prevent aggrieved employees from filing actions under SB 519, or with the ability to prevent courts from hearing such claims. Through counsel, Commissioner Avakian has stated as much.

Commissioner Avakian and BOLI consistently have maintained that BOLI has no enforcement role under SB 519. BOLI submitted a fiscal analysis of SB 519 to the 2009 legislature, emphasizing that the bill "would not require BOLI to enforce and only provides for an employee to seek a civil action remedy." (Avakian Dec. Exh. A.)[2] BOLI therefore concluded that the bill would have no fiscal impact on the agency. (*Id.*) Legislative staff apparently agreed. The Legislative Fiscal Office determined that the bill would have "Minimal Expenditure Impact" on the state government. (Carter Aff. Exh. D.)[3] That would not be the case if SB 519 created new enforcement obligations for BOLI.

Likewise, the staff measure summaries for SB 519 explain that it "[c]reates [an] employee civil cause of action." (Carter Aff. Exh. B, C.) Nothing in the text of SB 519, or the staff measure summaries, suggests that BOLI is required—or empowered—to enforce SB 519. Accordingly, Commissioner Avakian maintains that he has no authority to enforce SB 519, and he does not intend to file any actions under SB 519, or otherwise seek to enforce it. (Avakian

---

[2]  "Avakian Declaration" refers to the declaration of defendant Brad Avakian, Commissioner of BOLI. The declaration is filed with this memorandum.

[3]  "Carter Affidavit" refers to the affidavit of Nathan Carter, an assistant attorney general with the Oregon Department of Justice. The affidavit is filed with this memorandum.

Page 4 -    DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
    JD4/cjw/1905653-v5

Dec. ¶ 3.)  BOLI's legal policy advisor, Marcia Ohlemiller, explained BOLI's position to

plaintiffs before they filed this action.  (Ohlemiller Dec. ¶ 3.)[4]  To the best of Commissioner

Avakian's knowledge, no private suits have been filed under SB 519.

 Plaintiffs attempt to avoid this fact by asserting that Commissioner Avakian

"acknowledged that he has the authority to enforce SB 519" in his answer, and that he "has not

disclaimed authority" to enforce it.  (Pls. Mem. Supp. MSJ, p. 11.)  That is not true.  Paragraph 7

of the answer states:

> "Commissioner Avakian admits that he is currently serving as
> Commissioner of the Oregon Bureau of Labor and Industries
> ('BOLI').  In response to allegations regarding the terms of ORS
> 651.050, ORS 651.060(1), SB 519 and OAR 839-026-0020,
> Commissioner Avakian responds that the terms of those provisions
> speak for themselves.  Commissioner Avakian also admits that a
> BOLI document summarizing recent changes in Oregon civil rights
> laws includes a reference to SB 519.  Commissioner Avakian
> denies, however, that his office has set up a 'complaint intake
> procedure' for SB 519 complaints.  *Commissioner Avakian further
> responds that SB 519 contains no provisions authorizing him to
> enforce the law.*  The remainder of paragraph 7 states legal
> conclusions, to which no response is required."

(Emphasis added.)  Plaintiffs do not explain why Commissioner Avakian's statement, that

SB 519 contains no provisions authorizing him to enforce the law, leads them to conclude that he

"has not disclaimed authority to enforce SB 519."  Commissioner Avakian's answer—and his

declaration, filed with this memorandum—make it clear that he has, in fact, disclaimed that

---

[4]  "Ohlemiller Declaration" refers to the declaration of Marcia Ohlemiller, Legal Policy Advisor
for BOLI.  The declaration is filed with this memorandum.

 The Ohlemiller Declaration contains statements regarding a phone conversation with
plaintiffs' attorneys.  Those statements are not hearsay.  Hearsay is an out-of-court statement
"offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  However,
Commissioner Avakian offers Ohlemiller's statements to prove their effect on plaintiffs' state of
mind—*i.e.*, that their fears of enforcement were not reasonable.  "Out-of-court declarations
introduced to show the effect on the listener are not hearsay."  *Comite de Jornaleros de Redondo
Beach v. City of Redondo Beach*, 475 F. Supp. 2d 952, 969 (C.D. Cal. 2006).  Ohlemiller's
statements also are admissible as evidence of the declarant's state of mind, particularly the state
of mind of Ohlemiller, who is the legal advisor to Commissioner Avakian.  Fed. R. Evid. 803(3)
(hearsay is admissible as statement of declarant's "then existing state of mind . . . such as
intent[.]").

authority. And plaintiffs do not explain why they fear that Commissioner Avakian will conduct an "investigation" or make "administrative findings" under a law that, as the commissioner has explained, grants him no enforcement authority.[5]

Plaintiffs also argue that BOLI will enforce the "workplace posting requirement" of subsection (3), because "[i]t is entirely unclear who, other than BOLI, would be in a position to enforce the workplace posting requirement regarding SB 519." The text of SB 519 undermines that argument. Subsection (3) provides that "[a]n aggrieved employee may bring a civil action to enforce *this section*"—in other words, any violation of the statute, including a violation of the posting requirement. Furthermore, Commissioner Avakian has disclaimed authority to enforce any provision of SB 519, including the posting requirement. (Avakian Dec. ¶ 3.)

Plaintiffs also do not explain how enforcement of the *posting requirement* would cause them a cognizable injury. The injury that plaintiffs assert in their complaint is the inability to hold captive audience meetings, not the posting requirement. A state does not violate an employer's rights by requiring it to post the terms of a law: "[I]f the government has a right to promulgate these regulations it seems obvious that they have a right to statutorily require that they be posted in a place that would be obvious to the intended beneficiaries of the statute[.]" *Lake Butler Apparel Co. v. Sec'y of Labor*, 519 F.2d 84, 89 (5th Cir. 1975) (upholding OSHA posting requirement against First Amendment challenge).

## III. SUMMARY JUDGMENT STANDARDS

To obtain summary judgment, plaintiffs must demonstrate that "there is no genuine issue as to any material fact and that [plaintiffs are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). This Court should view inferences drawn from the facts in the light most

---

[5] In addition to denying that he has authority to enforce SB 519, Commissioner Avakian's answer also denies every allegation that he does not specifically admit. (Avakian Ans. ¶ 33 ("Unless specifically admitted above, each and every allegation of the Complaint is denied.")).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

favorable to the non-moving party. *911 Management, LLC v. United States*, 657 F.Supp.2d 1186, 1189 (D. Or. 2009).

## IV. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiffs are not entitled to summary judgment for three reasons. First, the facts alleged by plaintiffs do not demonstrate that there is a live controversy. In other words, plaintiffs allege no factual basis for their fear that Commissioner Avakian will enforce SB 519 against them. Second, as a matter of law, plaintiffs lack standing and their claims are not ripe. Finally, should this Court reach plaintiffs' substantive arguments, SB 519 is not pre-empted by the NLRA and does not violate the First Amendment. Commissioner Avakian therefore respectfully requests that this Court deny plaintiffs' motion for summary judgment.[6]

---

[6]  If this Court determines that it lacks jurisdiction due to plaintiffs' lack of standing, or the fact that their claims are not ripe, it need proceed no further. "[A] court has *no power* to render a 'holding' on the merits of a question that it lacks jurisdiction to consider." *Phelps v. Alameida*, 569 F.3d 1120, 1127 (9th Cir. 2009), *cert den*, ___ S.Ct. ___, 2010 WL 58771 (Jan. 11, 2010) (holding, in *dicta*, that a district court had no power to rule on a motion for reconsideration once it determined that it lacked jurisdiction to consider that motion) (emphasis in original).

Page 7 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
JD4/cjw/1905653-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

A.    **Plaintiffs present no material facts to support their claims that they have standing, or that the case is ripe.**

The facts alleged by plaintiffs do not support their claim that this case is justiciable. Plaintiffs assert that they have suffered an injury because they have refrained from engaging in planned communications based upon a "reasonable fear of enforcement." (Pls. Mem. Supp. MSJ, p. 15.) Toward that end, plaintiffs allege that they are "concerned about potential enforcement actions commenced by BOLI relating to SB 519." (Golomski Dec. ¶ 9; *see also* Freres Dec. ¶ 4.) Concern alone, however, is not a basis for standing. A plaintiff may not prevail on summary judgment "by relying solely on the plaintiff's subjective belief[.]" *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006). Plaintiffs must present objective facts demonstrating that their fear of enforcement was, as plaintiffs put it, "reasonable." They fail to do so.

First, plaintiffs fail to allege facts demonstrating that Commissioner Avakian will enforce SB 519. The only facts in the record regarding BOLI's intent come from Commissioner Avakian. Commissioner Avakian maintains—as he has since before this suit was filed—that he has no authority to enforce SB 519, and accordingly, he does not intend to do so. (Avakian Dec. ¶ 3; Ohlemiller Dec. ¶ 3.) There is no contrary evidence of BOLI's intentions regarding SB 519. Plaintiffs assert that "BrucePac is presently named in six BOLI charges of discrimination," and that "[a] BOLI investigator recently spent an entire day at our facility investigating those charges." (Golomski Dec. ¶ 9.) However, plaintiffs do not explain why BOLI's enforcement of other laws—which plaintiffs do not identify—would establish Commissioner Avakian's intent to enforce SB 519. Commissioner Avakian maintains that he lacks authority to enforce SB 519, not that he lacks authority to enforce *any* law.

Second, plaintiffs fail to allege that they have refrained from engaging in conduct that would violate SB 519. In one declaration, plaintiffs assert that since SB 519 was passed, one of their members has "refrained from holding mandatory communications with our employees[.]"

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

(Golomski Dec. ¶ 8.)  Likewise, plaintiffs AOI and Chamber of Commerce insist that other, unnamed members "wish to hold captive audience speeches to communicate the companies' views."  (Clemens Dec. ¶ 6; *see also* Law Dec. ¶ 6.)  This type of hearsay should be disregarded. In any event, SB 519 does not expose an employer to civil liability merely for holding meetings. SB 519 applies when an employer discharges or penalizes an employee, or threatens to do so, to compel the employee's attendance or participation in a meeting.  Plaintiffs have not alleged that they intend to penalize any of their employees, or how they would do so.[7]  Nor have plaintiffs explained why their members cannot communicate their views to their employees *without* compelling their attendance by threats or punishment.

In fact, plaintiffs appear to willfully misstate the requirements of SB 519. Representatives of plaintiff Chamber of Commerce and plaintiff AOI both state that SB 519 forces one of their members to choose between "foregoing its rights under the National Labor Relations Act" or "complying with state law with the result that its employees will be forced to make a decision on selecting a union as their bargaining representative on the basis of inadequate and incomplete information."  (Law Dec. ¶ 5; *see also* Clemens Dec. ¶ 5.)  SB 519 provides an employee with a right to walk away from a communication that the employee *does not want.*  It does not bar the employer from speaking, and it does not bar the employee from listening.  It also explicitly exempts communications that are "strictly voluntary."  SB 519 § (4)(h).  The suggestion that SB 519 will "force" employees to forgo valuable information, *if they want to receive it*, is baseless.  Allowing a listener to walk away from a speaker does not "force" him to

---

[7]  Other declarations do not even get that far.  Two declarants explain that prior to the passage of SB 519, their "communication structure allowed for holding mandatory group meetings with employees."  (Adler Dec. ¶ 4; Freres Dec. ¶ 4.)  But those declarants do not explain what actions they have taken since the law was passed—*i.e.*, whether they are still holding meetings or not. Furthermore, if plaintiffs *did* take adverse action against their employees, they would be far more likely to face lawsuits from those employees than from a state official who has disavowed any ability to enforce the law.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

ignore the speaker, just like installing an on/off switch on a stereo does not "force" its owner to refrain from listening to music.

**B.    This Court lacks subject matter jurisdiction over plaintiff's claims.**

A federal court must dismiss an action if it learns, at any time, that it lacks subject matter jurisdiction over the action. Fed. R. Civ. P. 12(h)(3). This Court lacks subject matter jurisdiction over this case because plaintiffs lack standing to bring their claims, and those claims are not ripe. Those are sufficient reasons to deny plaintiffs' motion for summary judgment.

**1.    Plaintiffs lack standing to sue Commissioner Avakian.**

Standing is "an absolute and ever-present prerequisite to a federal court's jurisdiction." *Ching Yee Wong v. Napolitano*, 654 F. Supp. 2d 1184, 1189 (D. Or. 2009) (alien's former employer had no standing to challenge denial of immigration application). Standing has three elements. First, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent." Second, the injury must be "fairly traceable to the challenged action of the defendant," and not the result of "the independent action of some third party not before the court." Third, it must be "likely" that the injury "will be redressed by a favorable decision." *Id.* at 1188 (internal punctuation omitted).

"Article III does not permit the federal judiciary to determine the constitutionality of a statute providing for private litigation, when the . . . government (or its agents) are the only adverse parties to the suit." *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) (citing *Muskrat v. United States*, 219 U.S. 346 (1911)). Plaintiffs are trying to invalidate a statute that provides a private cause of action by suing a state official who maintains that he can not, and will not, enforce that statute. The law of standing does not permit plaintiffs to do so.

The Tenth Circuit's decision in *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), demonstrates why plaintiffs cannot establish standing. In *Gandy*, the plaintiff sought to challenge a state statute making abortion providers liable, in tort, for post-abortion medical costs

Page 10 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
          JUDGMENT
          JD4/cjw/1905653-v5

of their minor patients. The plaintiff sued several state officials who were in charge of state medical institutions, seeking declaratory and injunctive relief.

The Tenth Circuit dismissed the case for lack of standing. The plaintiff had failed to show a causal connection between any injury under the statute and the defendants, because the defendants had not filed an action against the plaintiff. The plaintiff had "confused the *statute's* immediate coercive effect on the plaintiff with any coercive effect that might be applied by the *defendants.*" *Id.* at 1157 (quoting *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001)) (emphasis in original). Even if the state officials potentially had the power to sue the plaintiff under the statute, that did not make them suitable defendants because they were no different in that respect from any private citizen:

> "[I]f these defendants' latent power to litigate were enough to support standing, *anyone* who might someday have a claim under [the statute] could be summoned preemptively before the federal courts to defend the constitutionality of the statute. Article III does not allow a plaintiff who wishes to challenge state legislation to do so simply by naming as a defendant anyone who, under appropriate circumstances, might conceivably have an occasion to file a suit for damages under the relevant state law at some future date."

416 F.3d at 1157-58. The court held that the plaintiff had failed to establish causation.

The plaintiff in *Gandy* also failed to show that injunctive or declaratory relief against those defendants would redress its injuries. Even if those defendants were enjoined from seeking damages under the statute, "there would still be a multitude of other prospective litigants who could potentially sue [plaintiff] under that act." *Id.* at 1159. *See also Okpalobi*, 244 F.3d at 426 n. 34 ("An injunction enjoins a defendant, not a statute.").

Likewise, the *Gandy* court reasoned that a favorable declaratory judgment would not redress the plaintiffs' injuries, because "it must be the effect of the court's *judgment* on the defendant that redresses the plaintiff's injury, whether directly or indirectly." 416 F.3d at 1157. (emphasis added.) The court rejected the plaintiff's argument that a favorable opinion would deter other potential litigants from relying on the challenged statute. "If courts may simply

Page 11 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
            JUDGMENT
            JD4/cjw/1905653-v5

assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, redressability will always exist." *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring)). The difference between a declaratory judgment and a non-binding advisory opinion is that a declaratory judgment must settle "some dispute which affects the behavior of *the defendant* toward the plaintiff." *Id.* (emphasis in original).[8]

 *Gandy, Hope Clinic, Okpalobi,* and similar cases demonstrate why plaintiffs lack standing to pursue this case. First, plaintiffs have suffered no injury. To assert standing on the ground that they face future lawsuits under SB 519, plaintiffs must show "a *genuine* threat of *imminent* prosecution." *Ching Yee Wong*, 654 F. Supp. 2d at 1190 (emphasis in original; internal quotation marks omitted). BOLI has not initiated any kind of an action against plaintiffs. The Tenth Circuit has held that "affirmative assurances of non-prosecution from a governmental actor responsible for enforcing [a] challenged statute prevent[] a 'threat' of prosecution from maturing into a 'credible' one." *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) (plaintiffs had no standing to challenge state prohibition against polygamy). Here, Commissioner Avakian has emphasized that he has no *authority* to enforce SB 519, let alone any intent to do so. Plaintiffs have no basis for alleging that a prosecution by BOLI is "likely, or even . . . remotely possible." *Ching Yee Wong*, 654 F. Supp. 2d at 1190 (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1128 (9th Cir. 1996)). Plaintiffs fail to show that they face an actual or imminent injury in fact.[9]

---

[8]  *See also 1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993) (plaintiffs had no standing to sue Attorney General based on his "[g]eneral authority to enforce the laws"). *But see Chamber of Commerce v. Edmondson*, ___ F.3d ___, 2010 U.S. App. LEXIS 2248 (10th Cir. 2010) (finding standing to sue Attorney General for injunction against law forbidding public employers from employing contractors who fail to use a particular method of verifying eligibility for work). One judge dissented from *Edmondson's* discussion of standing, however, noting that it was inconsistent with *Gandy. Id.* at *74-75 (Hartz, J., dissenting).

[9]  Plaintiffs' claims of "self-censorship" are not sufficient to allege an injury in fact. *See* section III.B.2, *infra*.

Page 12 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
           JUDGMENT
           JD4/cjw/1905653-v5

Second, any alleged injury that plaintiffs face is not "fairly traceable" to any action of Commissioner Avakian. Again, Commissioner Avakian maintains that SB 519 does not provide him with a right of action against any employer. The bill does, however, provide workers across the state with rights of action. In other words, any injury that plaintiffs may face from SB 519 is traceable to the independent actions of third parties who are not before this Court, and not to the actions of Commissioner Avakian. Article III does not allow plaintiffs to challenge SB 519 by hauling Commissioner Avakian into court, based on a questionable assertion that he "might conceivably have an occasion to file a suit . . . at some future date." *Gandy*, 416 F.3d at 1157-58. There is no reason to believe that Commissioner Avakian ever will file such a suit.

Third, a judgment against Commissioner Avakian will not redress any alleged injury that plaintiffs face. The Seventh Circuit faced a similar question in *Hope Clinic*. The plaintiffs in *Hope Clinic* sued a state attorney general to stop enforcement of a statute that provided for private actions against abortion providers. The court held that, in such a case, an injunction would be either pointless or beyond the court's power:

> "An injunction prohibiting *these defendants* from enforcing the private-suit rules would be pointless; an injunction prohibiting *the world* from filing private suits would be a flagrant violation of both Article III and the due process clause[.]"

*Hope Clinic*, 249 F.3d at 605. The same is true here. An injunction against Commissioner Avakian will not "prevent a private plaintiff from invoking the statute in a civil suit," nor does he have authority "to order what cases the judiciary of [Oregon] may hear or not hear." *Okpalobi*, 244 F.3d at 427 (injunction against attorney general would not redress injuries arising from statute creating *private* right of action against abortion providers). "Enjoining *this defendant* from enforcing [SB 519] would be a meaningless gesture." *Bronson*, 500 F.3d at 1112 (injunction against county clerk "would not protect plaintiffs from any threat of future criminal prosecution"). And this Court has no power to enjoin workers from filing suit under SB 519, if those workers are not party to this action.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

Likewise, a declaratory *judgment* against Commissioner Avakian would not prohibit any private plaintiffs, who are not parties to this action, from filing suit under SB 519. *Gandy*, 416 F.3d at 1159. "[P]utative private plaintiffs are entitled to be notified and heard before courts adjudicate their entitlements." *Hope Clinic*, 249 F.3d at 605. A declaratory judgment, in this case, would amount to nothing more than an advisory opinion, and this Court is not empowered to issue such opinions.

Plaintiffs attempt to overcome their lack of standing by asserting that they have suffered self-censorship, citing *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003). That case, however, is not on point. The plaintiffs in *California Pro-Life Council* challenged California's campaign finance disclosure laws by suing the Fair Political Practices Commission, the body charged with enforcing those laws. The Ninth Circuit held that the plaintiffs had standing, even though the commission was not investigating them and had not threatened them with prosecution. *Id.* at 1094-95.

But in *California Pro-Life Council*, there was no discussion of redressability. There was no dispute over *who* had the power to enforce the laws in question. Here, by contrast, plaintiffs' lack of standing is not just based on the fact that Commissioner Avakian *has not* enforced SB 519 against them, but also on the fact that he *will not do so*, because SB 519 is to be enforced by private plaintiffs. None of plaintiffs' injuries can be traced to Commissioner Avakian, and relief against him will accomplish nothing. *California Pro-Life Council* did not uphold a suit against a state official who has insisted, consistently and repeatedly, that he has no authority to enforce a challenged law. It does not apply to this case, and it does not provide plaintiffs with standing.

**2.    Any cause of action against Commissioner Avakian is not ripe.**

Ripeness is similar to standing, and "can be characterized as standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000), *cert den*, 531

Page 14 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
JD4/cjw/1905653-v5

U.S. 1143 (2001).[10]  A court will not hear a pre-enforcement challenge to a statute if the case is not ripe.  To determine whether a challenge is ripe, the court inquires (1) whether the plaintiffs have articulated a "concrete plan" to violate the challenged statute; (2) whether authorities have communicated a "specific warning" or "threat to initiate proceedings," and (3) the history of past prosecution under the statute.  *Id.* at 1139.

In particular, the Ninth Circuit will dismiss a challenge to a statute on ripeness grounds if the defendant lacks intention or authority to enforce the statute.  "A constitutional challenge is justiciable *unless the local government disavows an intent to enforce the statute against the plaintiff.*"  *Waste Connections, Inc. v. Metropolitan Service Dist.*, 2000 WL 1364253 at *4 (D. Or. 2000) (emphasis added).

For example, in *Thomas*, the plaintiffs sued for an injunction against a state law that forbade landlords from discriminating against unmarried couples.  The Ninth Circuit dismissed the case, noting that the record was "devoid" of any threat of enforcement, the defendant agency's record of past enforcement was "limited," and in each case, enforcement was "precipitated by the filing of complaints by potential tenants."  *Id.* at 1140-41.  In *Stormans v. Selecky*, 586 F.3d 1109 (9th Cir. 2009), the plaintiffs sued Washington's Human Rights Commission, seeking to enjoin the enforcement of certain rules.  The Ninth Circuit dismissed the case, because the HRC had no authority to enforce the rules in question.  *Id.* at 1125.  *See also Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 850-51 (9th Cir. 2007) (dismissing challenge to rules of state Commission on Judicial Conduct because commission had not attempted to enforce the rules in question and lacked authority to issue sanctions).

---

[10]  In recent years, the Ninth Circuit has applied ripeness analysis more strictly to suits against state laws.  *See Thomas*, 220 F.3d at 1142 (O'Scannlain, J., concurring) (noting, with approval, that the circuit was "reshap[ing]" its "overly permissive jurisprudence of ripeness and standing by tightening the requirements for bringing lawsuits.")

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

*Thomas*, *Stormans*, and *Feldman* all demonstrate that this case is not ripe. Plaintiffs have asserted that at least one of their members has refrained from holding mandatory meetings since the passage of SB 519. But SB 519 does not prohibit an employer from holding meetings. It prohibits an employer from firing or penalizing employees who refuse to attend. Plaintiffs have alleged no intent to take such actions, and even if they did, "[a] general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. The record is "devoid" of any threat of enforcement, "generalized or specific." *Id.* at 1140. Commissioner Avakian emphasizes that he does not intend to enforce SB 519 and that SB 519 does not authorize him to take any action against an employer. Furthermore, there is no history of past prosecution under SB 519. Plaintiffs' claims are not ripe.

Again, *California Pro-Life Council* is not to the contrary. Plaintiffs claim that they have engaged in "self-censorship," but they have not demonstrated that their "self-censorship" is reasonable. First, "[t]he self-censorship door to standing does not open for every plaintiff. The potential plaintiff must have an actual and well-founded fear that the law will be enforced against [him or her]." 328 F.3d at 1095. In this case, plaintiffs' claim of a "well-founded fear" is questionable at best, given Commissioner Avakian's position that he lacks authority to enforce the statute. As discussed above, a fear of private prosecution does not provide a plaintiff with grounds to sue a state official.

Second, "neither self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement when the statute on its face does not regulate expressive activity." *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1143 (9th Cir. 2009) (distinguishing *California Pro-Life Council*). SB 519 is not aimed at expression. It is aimed at the terms of the employment relationship. SB 519, on its face, does not prohibit an employer from expressing views on union membership, or on any other political or religious topic. Instead, SB 519 concerns itself with conduct incidental to the employer's speech. If the employee attempts to walk away, and the employer penalizes or threatens him for doing so, then

Page 16 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT
    JD4/cjw/1905653-v5

SB 519 provides a cause of action. If SB 519 "chills" anything, it chills the employer's ability to penalize or fire its employees. That ability is a matter of state law. It is not protected by the First Amendment.

Plaintiffs also argue that they have standing because they seek a declaratory judgment, and the controversy is "essentially legal in nature." (Pls. Mem. Supp. MSJ p. 16.) Plaintiffs confuse prudential ripeness with constitutional ripeness. The Ninth Circuit will not render a decision on a pre-enforcement challenge unless a proper case or controversy exists that satisfies the requirements of Article III, *and* deciding the dispute is a prudent exercise of the court's power. *Thomas*, 220 F.3d at 1138 ("[T]he ripeness inquiry contains both a constitutional and a prudential component."). As for the second requirement, the court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141. But whether or not a case presents claims that are "essentially legal in nature," the court has no constitutional power to hear it if there is no live controversy between the parties. That is the case here. Furthermore, "the absence of any real or imminent threat of enforcement . . . seriously undermines any claim of hardship" that plaintiffs advance. *Id.* at 1142.

Finally, the notice-posting requirements of SB 519 do not give plaintiffs standing, because those requirements cause no cognizable injury. Merely requiring an employer to post notice of statutory rights does not impede plaintiffs from communicating with their employees, or infringe on their First Amendment rights. First Amendment protection against compelled speech exists "only in the context of governmental compulsion to disseminate a particular political or ideological message." *Scope Pictures v. City of Kansas City*, 140 F.3d 1201, 1205 (8th Cir. 1998) (no First Amendment violation in requiring adult entertainment venue to post information about sexually transmitted diseases). No such compulsion exists when the government only requires an employer to post the terms of a statute, as it does here. The Fifth Circuit has explained as much, with respect to a posting requirement under OSHA:

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

> "The posting of the notice does not by any stretch of the imagination reflect one way or the other on the views of the employer. It merely states what the law requires. The employer may differ with the wisdom of the law and this requirement even to the point as done here, of challenging its validity . . . But the First Amendment which gives him the full right to contest validity to the bitter end cannot justify his refusal to post a notice [the legislature] thought to be essential."

*Lake Butler Apparel Co.*, 519 F.2d at 89.

SB 519 § 3 only requires plaintiffs to post "a notice of employee rights under this section." It does not require plaintiffs to espouse a particular view. They remain free to question the wisdom and legality of SB 519. But they may not use the posting requirement as a ground to launch a pre-enforcement challenge against Commissioner Avakian, when all the evidence in the record indicates that he will never enforce the law against them. Plaintiffs' claims are not ripe, and a posting requirement does not change that fact. This Court should deny their motion for summary judgment.

**C.      The NLRA does not preempt SB 519.**

If this Court determines that it lacks jurisdiction due to plaintiffs' lack of standing, or the fact that their claims are not ripe, it need proceed no further. Commissioner Avakian offers the following arguments in the event that this Court reaches the substance of plaintiffs' complaint.

The Supreme Court recognizes three general ways in which federal law may preempt state law. "Express" preemption occurs when a statute expressly says that state law is displaced. *See Morales v. Trans World Airlines*, 504 U.S. 374, 383-84 (1992) (state guidelines for airline fare advertising were expressly preempted by Airline Deregulation Act). "Field" preemption occurs when Congress "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). "Conflict" preemption occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (state Alien Registration Act was preempted by federal immigration law).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

The NLRA does not contain an express preemption provision. Therefore, any pre-emption analysis "starts with the basic assumption that Congress did not intend to displace state law." *Building & Constr. Trades Council v. Assoc. Builders & Contractors of Mass.*, 507 U.S. 218, 224 (1993) (state bid specification was not preempted by NLRA). Courts recognize two ways in which the NLRA may preempt state law. The first, *Garmon* preemption, prohibits states from regulating activity that "is arguably subject to § 7 or § 8 of the [NLRA]." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). The second, *Machinists* preemption, forbids states from regulating the "self-help economic activities" that unions and employers use during collective bargaining, if doing so would "frustrate effective implementation of the [NLRA's] processes." *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 147-48 (1976). Neither doctrine applies to SB 519.

### 1.   *Garmon* does not preempt SB 519.

*Garmon* preemption protects the NLRB's primary jurisdiction over labor disputes. The question of whether an activity is arguably "protected by § 7," or "constitute[s] an unfair labor practice under § 8," is one that must "be left in the first instance to the [NLRB]." *Garmon*, 359 U.S. at 244-45. In other words, "when the same controversy may be presented to the state court or to the NLRB, it must be presented to the Board." *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 202 (1978).[11] *Garmon* does not pre-empt SB 519, because captive audience meetings are not "arguably" protected or prohibited by sections 7 or 8, and because a suit under SB 519 could not be presented to the NLRB.

---

[11]   Plaintiffs also appear to suggest that *Garmon* may somehow extend to section 9 of the NLRA. (Pls. Mem. Supp. MSJ p. 16.). The plain text of *Garmon*, however, makes it clear that it refers specifically to sections 7 and 8 of the NLRA. Aside from one cursory citation to a district court case, plaintiffs present no explanation of how *Garmon* would "extend" to section 9. Nor do plaintiffs explain what section 9 has to do with this case.

Page 19 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
JD4/cjw/1905653-v5

### a. The conduct covered by SB 519 is not arguably protected or prohibited by the NLRA.

The "primary jurisdiction" rationale of *Garmon* does not extend to cases in which "the controversy presented to the state court is . . . different from . . . that which could have been, but was not, presented to the Labor Board." *Id.* at 197. Nor does it extend "to cases in which" a plaintiff "has no acceptable method of invoking . . . the jurisdiction of the Board." *Id.* at 202. In such a situation, the "potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 304 (1977) (NLRA does not pre-empt union member from bringing claim for intentional infliction of emotional distress against his union).

For example, in *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966), the Court allowed an employer to bring state law defamation claims against a union even though the claims involved statements allegedly made by the union during the course of a labor campaign. The Court noted that "[t]he malicious publication of libelous statements does not in and of itself constitute an unfair labor practice." *Id.* at 63. The NLRB could "award no damages, impose no penalty, or give any other relief to the defamed individual." *Id.* The NLRB's "lack of concern" with defamation, and its "inability to provide redress," thus "vitiate[ed] the ordinary arguments for pre-emption." *Id.* at 64.

Even when conduct is "arguably" protected, that will not necessarily deprive a state court of jurisdiction over it. *Sears*, 436 U.S. at 200. "The fact that a state tort may also constitute an unfair labor practice . . . does not inevitably cause preemption of the state claim." *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 785 (9th Cir. 2001), *cert den*, 534 U.S. 1020 (2001). Pre-emption is warranted only if state jurisdiction will "create a significant risk of . . . prohibition of protected conduct." *Id.* at 203. By "protected conduct," *Sears* specifically referred to conduct that is protected under § 7 of the NLRA—in other words, to organizing activity. *Id.*; *see also id.*

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

at 199 n. 30 (drawing distinction between conduct that is "protected" under § 7 and conduct that is "protected" under *Machinists*).

Furthermore, *Garmon* does not pre-empt state jurisdiction over "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 244. Often this exception applies to traditional torts. *See Sears*, 436 U.S. at 195 (listing cases involving violence, threats of violence, libel, intentional infliction of emotional distress); *see also Radcliffe*, 254 F.3d at 786-87 (state-law claims for false arrest, false imprisonment, and malicious prosecution were not pre-empted).

The cases cited above demonstrate why *Garmon* pre-emption does not apply here. First, the case presented by a suit under SB 519 is not one that can be presented to the NLRB. Under the NLRA, "[a]n employee has no statutorily protected right to leave a meeting" at which the employer delivers an anti-union speech, or any kind of speech. *Litton Systems, Inc.*, 173 NLRB 1024, 1030 (1968) (upholding employee's termination after employee left one such meeting).

The NLRA does recognize an action for wrongful discharge, but only if the employee is discharged "to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). An employee must show "that union animus was a motivating factor in the adverse employment action[.]" *Hospital Cristo Redentor, Inc. v. NLRB*, 488 F.3d 513, 518 (1st Cir. 2007) (firing employee was unfair labor practice, although firing was "for cause" under state wrongful discharge law). Without that union animus, the employee has no cause of action. The NLRA "does not purport to give the Board any control whatever over the employer's policies concerning tenure of employment," or his "measures of discipline." *NLRB v. Prescott Indus. Prods. Co.*, 500 F.2d 6, 11 (8th Cir. 1974). Thus, if an employer fires an employee for refusing to attend a political or religious speech, that employee has no "acceptable method" for invoking the jurisdiction of the NLRB. The facts of such a case could not even "arguably" violate the NLRA.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

Conversely, if an employee is fired for engaging in union activity, the employee is not likely to have a cause of action under SB 519. SB 519 does not require any showing of "union animus," and it does not protect the right to organize. The inquiry under SB 519 is limited to (1) whether the employer fired or penalized the employee and (2) whether the employer did so because the employee declined to participate in a meeting. Thus, "the respective controversies presented to the state and federal forums would [not] have been the same." *Sears*, 436 U.S. at 196-97. *See also Zavadil v. Alcoa Extrusions, Inc.*, 437 F.Supp.2d 1068, 1075 (D. S.D. 2006) (breach of contract claim not pre-empted, because it "does not require any showing that Plaintiff's termination was in any way intended to interfere with, restrain or coerce non-supervisory employees in the exercise of their organizational rights.").

The NLRB's lack of concern with captive audience meetings, and its inability to provide redress for an employee who is wrongly fired for refusing to attend one, vitiate the ordinary arguments for preemption. Furthermore, there is no "significant risk of . . . prohibition of protected conduct." *Sears*, 436 U.S. at 203. As stated above, "protected conduct" refers to the organizing activity that is expressly "protected" under section 7. SB 519 presents no risk of interfering with that, or of interfering with the NLRB's jurisdiction.

Furthermore, SB 519 touches on interests that are "deeply rooted in local feeling and responsibility." Oregon tort law has long held an employer liable when the employer discharges an employee for a "socially undesirable motive." *Ness v. Hocks*, 272 Or. 210, 218 (1975) (wrongful discharge based on jury duty). SB 519 is an outgrowth of that law. It is based on the idea that when an employer penalizes or fires employees to compel their indoctrination, that employer acts with a socially undesirable motive. Like other state-law torts, SB 519 is not pre-empted by the NLRA simply because it affects employers and employees.

       **b.**    **Plaintiffs' arguments to the contrary are erroneous.**

Plaintiffs' arguments to the contrary are not well taken. Plaintiffs argue that SB 519 interferes with the NLRB's "interpretation and active enforcement" of the NLRA, citing

Page 22 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
         JUDGMENT
         JD4/cjw/1905653-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

*Chamber of Commerce v. Brown*, ___ U.S. ___, 128 S. Ct. 2408, 2412 (2008). This is not true.

First, *Brown* struck down a California law on the basis of *Machinists* pre-emption; any

discussion of *Garmon* in that case was *dicta*. *See Brown*, 128 S. Ct. at 2412 (declining to reach

question of whether the law at issue was pre-empted under *Garmon*). Second, as demonstrated

above, SB 519 does not interfere with the interpretation or the enforcement of the NLRA. The

NLRB already has decided that an employee has "no statutorily protected right to leave a

meeting." *Litton*, 173 NLRB at 1030. The NLRB has thus interpreted the NLRA in a way that

leaves claims under SB 519 entirely outside of its jurisdiction.

Plaintiffs attempt to get around that fact by arguing that section 8(c) of the NLRA

"protects" their right to compel the political indoctrination of their employees. But section 8(c)

does not provide a basis for pre-empting a state law under *Garmon*, because it does not "protect"

plaintiffs from anything except application of the NLRA itself. Section 8 of the NLRA defines

"unfair labor practices" and provides, in part:

> The expressing of any views, argument, or opinion, or the
> dissemination thereof, whether in written, printed, graphic, or
> visual form, *shall not constitute or be evidence of an unfair labor
> practice* under any of the provisions of this subchapter, if such
> expression contains no threat of reprisal or force or promise of
> benefit.

29 U.S.C. § 158(c) (emphasis added). By its terms, section 8(c) states that an employer's speech

is not "evidence of an unfair labor practice." In other words, that speech is not prohibited. But a

lack of prohibition does not equal a grant of protection. The Court itself, in *Garmon*,

distinguishes between conduct "protected by § 7, or prohibited by § 8[.]" 359 U.S. at 245; *see

also Sears*, 436 U.S. at 199-200 (making the same distinction).[12] The D.C. Circuit has explained

that, for those reasons, "[f]itting a *Garmon* claim under the language of § 8(c) is awkward":

---

[12]    *Sears* points out that "[a]part form notions of 'primary jurisdiction,' there would be no
objection to state courts' and the NLRB's exercising concurrent jurisdiction over conduct
prohibited by the federal Act. But there is a constitutional objection to state-court interference
with conduct actually protected by the Act." 436 U.S. at 199.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

> "[Section] 8(c) works to *negate* an unfair labor practice claim
> against an employer . . . But that gives it only a peripheral link to
> the subject of *Garmon.* Even if we delete *Garmon*'s references to
> specific sections, the activities described in § 8(c) do not constitute
> an unfair labor practice, except by negation, and are not protected
> *by* the NLRA, except from the NLRA itself."

*UAW-Labor Employment & Training Corp. v. Chao*, 325 F.3d 360, 364-65 (D.C. Cir. 2003), *cert*

*den*, 541 U.S. 987 (2004) (internal quotation marks omitted) (emphasis in original).

Furthermore, SB 519 does not deal with the kind of conduct covered by section 8(c).

SB 519 does not prohibit "[t]he expressing of any views, argument, or opinion, or the

dissemination thereof[.]" An employer may speak his mind to an employee on any subject.

SB 519 merely provides that if the employee chooses not to participate, the employer may not

compel him to do so.

Plaintiffs also argue that *Garmon* pre-empts SB 519 because the NLRA already regulates

captive audience meetings under the *Peerless Plywood* rule. *See Peerless Plywood Co.*, 107

NLRB 427 (1953). But, again, a violation of *Peerless Plywood* does not present the same

controversy as a claim under SB 519. The *Peerless Plywood* rule prohibits both employers and

unions from "making election speeches on company time to massed assemblies of employees

within 24 hours before the scheduled time for conducting an election." 107 NLRB at 429. The

reason for the rule is the "unwholesome effect" of a last-minute pre-election speech:

> "[L]ast-minute speeches by either employers or unions delivered to
> massed assemblies of employees on company time have an
> unwholesome and unsettling effect and tend to interfere with that
> sober and thoughtful choice which a free election is designed to
> reflect."

*Id. Peerless Plywood* thus focuses on the *timing* of the speech itself. By contrast, SB 519 does

not address the effects of the speech, or its timing. SB 519 addresses (1) whether the employer

threatened, penalized, or fired the employee, and (2) whether the employer did so because the

employee declined to hear a speech.

Furthermore, the remedies for violations of the two laws are entirely different. SB 519 is

intended to restore the employee to his rightful situation at work by awarding reinstatement, back

Page 24 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
JD4/cjw/1905653-v5

pay, and similar remedies. SB 519 § (2). But *Peerless Plywood* is concerned with the conduct

of elections, and the remedy for a violation of its rule is to order a new election. 107 NLRB at

430-31. An employee who was fired for refusing to attend a speech is not likely to obtain

reinstatement by filing an unfair labor practice charge under *Peerless Plywood*. Thus, SB 519

does not interfere with the jurisdiction of the NLRB, or with an employer's right to speak. It is

not pre-empted by *Garmon*.

> **2.    *Machinists* does not preempt SB 519.**

Under the *Machinists* doctrine, the NLRA preempts state laws "that regulate activity

Congress intended to leave unregulated." *Dillingham Construction N.A., Inc. v. County of

Sonoma*, 190 F.3d 1034, 1038 (9th Cir. 1999). *Machinists* preemption "is based on the premise

that Congress struck a balance of protection, prohibition, and laissez-faire in respect to union

organization, collective bargaining, and labor disputes." *Brown*, ___ U.S. ___, 128 S. Ct. at

2412 (internal quotation marks omitted). SB 519 does not upset this balance. Instead, it sets the

sort of minimal employment standard that *Machinists* leaves within state power.

> **a.    SB 519 sets a minimal state-law standard for an employer's ability to
> discipline or discharge employees.**

The Supreme Court repeatedly has recognized that the basic conditions of the

employment relationship are matters of state law, not federal law:

> "Absent a collective-bargaining agreement, for instance, state
> common law generally permits an employer to run the work-place
> as it wishes . . . [and] if impasse is reached, the employer may rely
> on pre-existing state law to justify its authority to make
> employment decisions; that same state law defines the rights and
> duties of employees."

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) (statute requiring employers to make

severance payment to employees, in the event of a plant closing, was not pre-empted by NLRA).

State laws form a "backdrop" for the negotiations between employers and employees, and

determine the extent of their legal rights regarding one another. *Id.* For example, the Supreme

Court recently recognized that an employer's right to exclude union organizers from his property

Page 25 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
JD4/cjw/1905653-v5

"emanates from state common law," and that the NLRA does not pre-empt this right. Because "nothing in the NLRA expressly protects it," *Machinists* preemption did not apply. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 217 n. 21 (1994) (citing *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992)).

The Court has struck a balance between state prerogatives and the NLRA by holding that *Machinists* does not preempt a state law that "establishes a minimal employment standard not inconsistent with general legislative goals of the NLRA." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 757 (1985). "Numerous state minimum labor standards have survived NLRA pre-emption challenges[.]" *Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 988 (9th Cir. 2004). *See id.* at 988-91 (establishment of minimum wages and benefits for apprentices was not preempted by *Machinists*); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 865 (9th Cir.1987), *cert den*, 486 U.S. 1054 (1988) (state claim for wrongful termination, based on state's public policy as expressed in health and safety regulations, was not preempted by NLRA); *Dillingham*, 190 F.3d at 1038-39 (prevailing wage law for apprentices was not preempted by *Machinists*).

The employer's ability to hire and fire employees is one of the areas where a state may set minimal standards on the employment relationship. As the Court noted in *Fort Halifax*, an employer relies on "state law to justify its employment decisions." 482 U.S. at 21. As mentioned earlier, the hiring and firing of employees in Oregon generally is a matter of state law. Oregon common law generally treats employment relationships as at-will, but recognizes a tort of wrongful discharge. *Valentine*, 2007 WL 4270761 at *7. Likewise, the Oregon legislature may limit an employer's power to discharge employees, and has done so. *E.g.*, ORS § 10.090 (employer may not discharge employee for jury service); ORS 652.355 (employer may not discharge or discriminate against an employee who files a wage claim).

And a state action for wrongful discharge does not violate *Machinists*. The Third Circuit's decision in *St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

(3d Cir. 2000), is on point. In 1986, the Virgin Islands enacted a Wrongful Discharge Act

(WDA), which set forth nine lawful grounds on which an employer could dismiss an employee.

An employee who was discharged for any other reason could file an administrative complaint for

reinstatement and back pay. The Third Circuit held "in enacting the NLRA, Congress did not

intend to prevent states from establishing minimum substantive requirements for contract terms."

*Id.* at 243. Accordingly, the WDA was not preempted by *Machinists*:

> "In establishing nine statutory bases for lawful discharge in the
> Virgin Islands, the WDA neither regulates the process of
> bargaining nor upsets the power of management on one side and
> labor on the other that is established by the NLRA. Instead, the
> WDA is directed to limiting the permissible bases for discharge of
> an employee to a broad list[.]"

*Id.* at 244.

SB 519, like the act upheld in *St. Thomas*, does not regulate the process of bargaining.

Nor does it upset the power of management. SB 519 leaves employers and employees free to

debate the benefits of unionization. Employers may continue to freely communicate with their

employees and to explain their view of the problems that having a union might bring. SB 519

merely provides that, as a minimum labor standard, employers may not fire or penalize their

employees for refusing those communications. Thus, SB 519 is not preempted by *Machinists*,

and plaintiffs are not entitled to relief.[13]

---

[13]   The Ninth Circuit's decision in *Barnes v. Stone Container Corp.*, 942 F.2d 689 (9th Cir.
1991), is not to the contrary. In *Barnes*, an employer fired a union member for harassment of his
co-workers. At that time, the union and employer were engaged in contract negotiations, and the
prior contract had expired. The union member filed an unfair labor practice charge, which the
NLRB rejected. The member then filed an action under Montana's Wrongful Discharge Act
(WDA), which forbade discharge of an employee without "good cause." The Ninth Circuit held
that the WDA action was pre-empted, due to its *timing*: "[T]he incidental effect of allowing
Barnes to pursue his WDA action after contract expiration, but prior to a bargaining impasse, is
precisely the sort of entanglement the Supreme Court sought to avoid in *Machinists*." *Id.* at 693.

The scope of *Barnes*, however, is limited. In *Nat'l Broadcasting Co. v. Bradshaw*, 70
F.3d 69 (9th Cir. 1995), California applied minimum overtime pay requirements to an employer
negotiating with a union, but did so after the employer and the union had reached an impasse.
The Ninth Circuit held that the state action was not pre-empted, because it did not occur "until
after impasse was reached, and therefore the type of interference with negotiations frowned upon
in *Barnes* did not occur here." *Id.* at 73. The Third Circuit has since analyzed *Barnes* and

Page 27 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
            JUDGMENT
            JD4/cjw/1905653-v5

b.    **Plaintiffs' arguments to the contrary are erroneous.**

Plaintiffs' arguments to the contrary are erroneous.  First, SB 519 does not impede

employer speech, or hinder "free debate on issues dividing labor and management." *Brown*, 128

S. Ct. at 2413 (quoting *Linn*, 383 U.S. at 62).   As plaintiffs note, in *Brown*, the Court found that

the NLRA preempted California restrictions on spending state money on anti-union efforts. The

Court repeatedly emphasized that the NLRA was intended to encourage uninhibited debate.

> "We have characterized this policy judgment, which suffuses the
> NLRA as a whole, as favoring uninhibited, robust, and wide-open
> debate in labor disputes, stressing that freewheeling use of the
> written and spoken word ... has been expressly fostered by
> Congress and approved by the NLRB."

*Id.* at 2414 (quotations omitted).  The Court noted that "Congress' express protection of free

debate forcefully buttresses the pre-emption analysis" in that case.

In this case, consistent with *Brown*, SB 519's protections for workers will also serve to

foster freewheeling, wide-open debate.  SB 519 does not restrict an employer's ability to speak

on any subject.  It simply prohibits the employer from firing or penalizing an employee who does

not wish to listen.  It is not clear how "freewheeling" a debate can be if employees must live in

fear that they will be fired if they don't pay sufficient regard to an employer's talking points.[14]

Plaintiffs also argue that SB 519 limits "economic weapons Congress meant to be

unregulable." (Pls. Mem. Supp. MSJ, p. 18 (quoting *Machinists*, 427 U.S. at 150).  There are

several problems with that argument.  First, "economic weapons" is a euphemism.  What

plaintiffs seek to establish is an unqualified right to compel an employee to listen to speech, even

---

*Bradshaw* and concluded that *Barnes* "did not invalidate the state statute [for wrongful
discharge], but merely held [that] its use in those unique circumstances was pre-empted." *St.
Thomas*, 218 F.3d at 244. Those "unique circumstances"—after contract expiration, but before
impasse—are not present in this case, and therefore *Barnes* does not apply.

[14]  Commentators have suggested that captive audience meetings, rather than encouraging free
debate, serve primarily to demonstrate the employer's power over the employee. *See* Elizabeth
J. Masson, '*Captive Audience' Meetings in Union Organizing Campaigns: Free Speech or
Unfair Advantage?*, 56 Hastings L.J. 169, 181-84 (2004) (criticizing the argument that captive
audience meetings "encourage debate over the pros and cons of unionization").

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

speech that the employee finds offensive, by threatening his livelihood. Second, as emphasized above, employment relationships historically have been the province of state law. If a state may not regulate an employer's ability to hire and fire employees, then no government may. And *Machinists* was not intended to "remove the backdrop of state law that provided the basis of congressional action [and] thereby artificially *create* a no-law area." *Metropolitan Life*, 471 U.S. at 757 (emphasis in original).

Third, federal law undercuts the notion that Congress intended an employer's ability to fire and penalize employees to be "unregulable." Congress heavily regulates that ability. Congress bars an employer from firing a person, or discriminating with respect to that person's conditions of employment, because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Likewise, an employer may not fire or penalize an employee based on that person's age, or a disability. 29 U.S.C. § 623(a); 42 U.S.C. § 12112(a). Garnishment of wages for a debt, or refusal to take a polygraph test, are not valid bases for firing or disciplining an employee. 15 U.S.C. § 1674(a); 29 U.S.C. § 2002(3). These are just a fraction of the limitations that Congress places on an employer's power to fire or penalize employees. The Court has noted that federal statutes "will contract the pre-emptive scope of the NLRA if [they] demonstrate[] that 'Congress has decided to tolerate a substantial measure of diversity' in the particular regulatory sphere." *Brown*, 128 S. Ct. at 2408 (quoting *New York Telephone Co. v. New York Dept. of Labor*, 440 U.S. 519, 546 (1979)) (internal quotation marks omitted).

The laws cited above, and others like them, demonstrate that Congress tolerates a substantial measure of diversity among laws that govern the employment relationship. At the very least, these laws demonstrate that the ability to penalize and fire employees is not "unregulable." *Machinists* does not impose a *laissez-faire* system on state employment laws, including laws governing the discipline and discharge of employees. *Machinists* does not pre-empt SB 519.

**D.    SB 519 does not violate the First Amendment.**

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

As stated above, because the Court lacks jurisdiction due to plaintiffs' lack of standing, and because plaintiffs' claims are not ripe, the Court need proceed no further. Should the Court reach the merits, after holding that SB 519 is not preempted, the Court should further hold that plaintiffs are not entitled to summary judgment on their First Amendment claims.

SB 519 does not violate the First Amendment. First, the "right" that plaintiffs seek to defend is a right to hold an audience captive by threats or penalties. The First Amendment does not protect such a right.[15] The Supreme Court recognizes a distinction between restrictions on communications "that involve willing listeners" and those that interfere with "the right of every person to be let alone." *Hill*, 530 U.S. at 718 (internal quotation marks omitted). The latter are not protected. "The First Amendment permits the government to prohibit offensive speech as intrusive when the 'captive' audience cannot avoid the objectionable speech." *Frisby v. Schultz*, 487 U.S. 474, 487 (1988) (upholding ordinance prohibiting picketing of residence).

Plaintiffs insist that if they are not allowed to coerce their employees to be present for captive audience sessions, those employees "will select a union as their bargaining representative based on ill informed decisions." (Clemens Dec. ¶ 5.) The First Amendment, however, does not support such a paternalistic view of free debate. "[N]o one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 738 (1970) (upholding statute allowing homeowners to prevent mail delivery from certain senders). That statement applies to employers as well as any other participant in a debate.

Lower courts recognize this distinction as well, holding that employees on the job are a "captive audience," and the First Amendment "admits great latitude in protecting captive audience from offensive speech." *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486,

---

[15]  Plaintiffs assert that the NLRB "has consistently held that [captive audience] meetings are protected activity under . . . the First Amendment." (Pls. Mem. Supp. MSJ, p. 5.) Plaintiffs cite *Ridgewood Mgmt. Co., Inc.*, 171 NLRB 148 (1968), as support for that proposition. But *Ridgewood* only holds that captive audience speeches do not violate the NLRA. *Ridgewood* says nothing about whether the First Amendment grants a right to a speaker to compel the participation of an audience.

Page 30 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
JD4/cjw/1905653-v5

1535-36 (M.D. Fla. 1991) (rejecting First Amendment defense to injunction against hostile work environment). The Seventh Circuit, for example, has rejected a religious group's claim of a First Amendment right to lecture sheriff's deputies who were "on the job", holding that there is a difference "between claims asserting access to a forum and claims asserting access to a captive audience." *Milwaukie Deputy Sheriffs' Assoc. v. Clarke*, 2009 WL 4408197 at *5 (7th Cir. 2009). In short, the right that plaintiffs claim is one that has been soundly rejected.[16]

Second, plaintiffs base their First Amendment claims on a misreading of the statute. SB 519 does not "suppress an employer's speech on certain subjects." (Pls. Mem. Supp. MSJ, p. 21.) SB 519 forbids an employer to "discharge, discipline or otherwise penalize or threaten . . .or take any adverse employment action" against an employee who "declines to attend" a captive audience meeting. SB 519 § 2(1). That provision does not prevent an employer from speaking on any subject. It provides only that, if an employee does not attend the employer's speech, the employer may not fire or penalize him for doing so. In other words, SB 519 regulates conduct, not speech, and laws that regulate conduct do not violate the First

---

[16]   In some cases, the Court has rejected the state's arguments that it is protecting an unwilling audience from being held captive by the speaker. But when the Court does so, it acts on an underlying assumption that those who are offended may "effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen v. California*, 403 U.S. 15, 21 (1971) (state may not punish defendant for wearing jacket saying "Fuck the Draft" in a courthouse). For example, in *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975), the Court struck down an ordinance that banned films showing nudity from drive-in theaters. Justice Powell, writing for the majority, noted that "the screen of a drive-in theater is not so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it." *Id.* at 212 (internal quotation marks omitted).

A captive audience meeting presents an entirely different situation. A person who drives by a drive-in theater can easily look away. No coercion is involved. By contrast, if an employer gathers his workers into a room, tells them that they will be fired if they leave, and then proceeds to lecture them about how they should vote, unwilling workers have no way to "avoid exposure" to that speech. They cannot simply avert their eyes, stop their ears, or walk away. "Few audiences are more captive than the average worker." *Robinson*, 760 F. Supp. at 1535 (quoting Jack Balkin, *Some Realism About Pluralism: Legal Realist Approaches to the First Amendment*, 1990 Duke L.J. 375, 423-24)). The NLRB has recognized that "an element of compulsion is present in all 'captive audience' speeches." *Ridgewood*, 171 NLRB at 151. SB 519 is targeted at this sort of coercion, not at situations where the employee is free to walk away without fearing for his livelihood.

Page 31 -   DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
            JD4/cjw/1905653-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

Amendment.[17] *See Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (hate crimes statute did not

violate free speech rights because "the statute . . . is aimed at conduct unprotected by the First

Amendment.").

Finally, even if SB 519 had an incidental effect on employer speech, that would not be

enough to establish a First Amendment violation. When "potentially expressive activities . . .

produce special harms distinct from their communicative impact, such practices are entitled to no

constitutional protection." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) (requiring Jaycees

to accept women as members did not abridge their freedom of expressive association). The

government may regulate speech and non-speech elements of the same conduct, as long as it

meets the following test:

> "[W]e think it clear that a government regulation is sufficiently
> justified if it is within the constitutional power of the Government;
> if it furthers an important or substantial governmental interest; if
> the governmental interest is unrelated to the suppression of free
> expression; and if the incidental restriction on alleged First
> Amendment freedoms is no greater than is essential to the
> furtherance of that interest."

*United States v. O'Brien*, 391 U.S. 367, 377 (1968) (conviction for burning a draft card did not

violate the First Amendment).

As explained above, the substantive terms of an employment relationship—including

grounds for discharge—are within Oregon's constitutional power. *E.g., Fort Halifax*, 482 U.S.

at 21 ("state law defines the rights and duties of employers."). A state "clearly possesses a direct

and substantial interest in the employment of its citizens." *DCS Sanitation Management, Inc. v.*

*Castillo*, 435 F.3d 892, 896 (8th Cir. 2006), *cert den*, 549 U.S. 882 (2006) (holding that

Nebraska had such an interest for choice-of-law purposes); *see also Ellenwood v. Exxon*

*Shipping Co.*, 984 F.2d 1270, 1274 (1st Cir. 1993), *cert den*, 508 U.S. 981 (1993) (state statutes

---

[17]  Nor does SB 519 regulate the kind of expressive conduct that the First Amendment protects.
The Supreme Court extends First Amendment protection "only to conduct that is inherently
expressive." *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006). There is nothing inherently
expressive about the act of firing or penalizing an employee.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

prohibiting discrimination against handicapped were not preempted by federal law; state has "a substantial interest in protecting the employment interests of its handicapped citizens."). The state's interest here, in protecting the employment of its citizens, is not related to the suppression of anyone's expression. The employer remains free to speak, although he may not compel others to listen. The employer's First Amendment rights are not burdened *at all*, let alone more than is necessary to further the state's interests. Plaintiffs' First Amendment claims have no merit.

### V. CONCLUSION

There is no basis for a grant of injunctive and declaratory relief against Commissioner Avakian, given his repeated statements that he has no authority or intent to enforce SB 519. Plaintiffs have no standing to sue Commissioner Avakian, and their claims are not ripe. SB 519 is not pre-empted by the NLRA, and it does not violate the First Amendment. For all of those reasons, Commissioner Avakian respectfully requests that this Court deny plaintiffs' motion for summary judgment.

DATED this 26th day of February, 2010.

Respectfully submitted,

JOHN R. KROGER
Attorney General

JOHN J. DUNBAR #842100
NATHAN B. CARTER #073461
Assistant Attorneys General
Trial Attorneys
John.Dunbar@doj.state.or.us
Nathan.Carter@doj.state.or.us
Of Attorneys for Defendant Brad Avakian

Page 33 -  DEFENDANT BRAD AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
        JUDGMENT
        JD4/cjw/1905653-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

## CERTIFICATE OF SERVICE

I certify that on February 26, 2010, I served the foregoing DEFENDANT BRAD

AVAKIAN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT upon

the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Scott Oborne | ___ HAND DELIVERY |
| Heidi Guettler | ___ MAIL DELIVERY |
| Mark A. Crabtree | ___ OVERNIGHT MAIL |
| Jackson Lewis LLP | ___ TELECOPY (FAX) |
| 806 SW Broadway 4th Flr | ___ E-MAIL |
| Portland OR  97205 | _X_ E-FILE |
|     Attorneys for Plaintiff Associated | |
|     Oregon Industries and Chamer of | |
|     Commerce of the United States of | |
|     America | |

| | |
|---|---|
| Robin S. Conrad | ___ HAND DELIVERY |
| Shane B. Kawka | ___ MAIL DELIVERY |
| National Chamber Litigation Center, Inc. | ___ OVERNIGHT MAIL |
| 1615 H Street NW | ___ TELECOPY (FAX) |
| Washington, DC  20062 | ___ E-MAIL |
| | _X_ E-FILE |

| | |
|---|---|
| David A. Rosenfeld | ___ HAND DELIVERY |
| Weinberg, Roger & Rosenfeld | ___ MAIL DELIVERY |
| 1001 Marina Village Pkwy, Suite 200 | ___ OVERNIGHT MAIL |
| Alameda, CA 94501 | ___ TELECOPY (FAX) |
|     Attorneys for Defendant Laborers' | ___ E-MAIL |
|     International Union of North America, | _X_ E-FILE |
|     Local No. 296 | |

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

Giles H. Gibson
Giles Gibson Law LLC
PO Box 4205
Portland OR  97208
     Attorneys for Defendant Laborers'
     International Union of North America,
     Local No. 296

___ HAND DELIVERY
___ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX)
___ E-MAIL
_X_ E-FILE

JOHN J. DUNBAR #842100
NATHAN B. CARTER #073461
Assistant Attorneys General
Trial Attorneys
John.Dunbar@doj.state.or.us
Nathan.Carter@doj.state.or.us
Of Attorneys for Defendant Brad Avakian

Page 2 -    CERTIFICATE OF SERVICE
         JD4/cjw/1804966-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793