1   DAVID A. ROSENFELD, Bar No. 058163
    (Admitted Pro Hac Vice )
2   WEINBERG, ROGER & ROSENFELD
    A Professional Corporation
3   1001 Marina Village Parkway, Suite 200
    Alameda, California 94501-1091
4   Telephone 510.337.1001
    Fax 510.337.1023
5
6   GILES GIBSON, Bar No. 921750
    GILES GIBSON LAW, LLC
    P.O. Box 4205
7   Portland, OR 97208
    Tel: (503) 477-8900
8   Fax: (503) 208-2558

9   Attorneys for Defendant,
    LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 296
10

11

12                          UNITED STATES DISTRICT COURT

13                               DISTRICT OF OREGON

14

15   ASSOCIATED OREGON INDUSTRIES        ) No.     3:09-CV-1494- MO
     And CHAMBER OF COMMERCE OF THE      )
16   UNITED STATES OF AMERICA,           )
                                         )
17              Plaintiffs,              )
                                         )
                                         )  **OPPOSITION TO MOTION FOR**
18       v.                              )  **SUMMARY JUDGMENT**
                                         )
19   BRAD AVAKIAN, Individually and as   )
     Commissioner of the Oregon Bureau of Labor )
20   and Industries, and LABORERS'       )
     INTERNATIONAL UNION OF NORTH        )
21   AMERICA, LOCAL NO. 296              )
                                         )
22                                       )
                Defendants.              )
23   _____)

24

25

26

27

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  SB 519 IS NOT PRE-EMPTED BY THE NATIONAL LABOR
RELATIONS ACT ................................................................................... 2

    A.   THIS COURT MUST BE RELUCTANT TO INFER
         PREEMPTION OF A STATE LAW ............................................... 2

    B.   SB 519 DOES NOT REGULATE CONDUCT WHICH
         IS ARGUABLY PROTECTED OR PROHIBITED
         BY THE NLRA. ............................................................................ 4

    C.   SB 519 PROTECTS INTERESTS DEEPLY ROOTED IN
         LOCAL FEELING AND RESPONSIBILITY; IT FALLS INTO
         AN EXCEPTION TO *GARMON* PREEMPTION. ........................... 6

    D.   SB 519 DOES NOT REGULATE ECONOMIC WEAPONS
         THAT FEDERAL LAW INTENDS TO LEAVE TO THE
         FREE PLAY OF ECONOMIC FORCES. ....................................... 8

    E.   THE STATE'S AUTHORITY TO ESTABLISH MINIMUM
         WORKING CONDITIONS PERMITS IT TO ENACT SB 519. ..... 11

III.  SB 519 IS FULLY CONSISTENT WITH THE FIRST AMENDMENT ..... 12

IV.  CONCLUSION: .................................................................................. 16

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

# TABLE OF AUTHORITIES

## Federal Cases

*Alameda Newspapers, Inc. v. City of Oakland,*
  95 F.3d 1406 (9th Cir. 1996) .................................................................. 2

*Belknap, Inc. v. Hale,*
  463 U.S. 491 (1983) ......................................................................... 7, 8

*Bread v. City of Alexandria,*
  341 U.S. 622 .................................................................................... 7

*Carey v. Brown,*
  447 U.S. 445 (1980) ............................................................................ 7

*Chamber of Commerce v. Brown,*
  ___ U.S. ___, 128 S.Ct. 2408 (2008) ...................................................... 9

*Chamber of Commerce v. Reich,*
  74 F.3d 1322 (D.C.Cir. 1996) ................................................................ 9

*Consolidated Edison Co. v. Public Serv. Comm.,*
  447 U.S. 530  (1980) ......................................................................... 14

*DeCanas v. Bica,*
  424 U.S. 351 (1976) .......................................................................... 11

*Edward J. Debartolo Corp. v. Florida Gulf Coast Bldg & Constr. Trades Council,*
  485 U.S. 568 (1988) .......................................................................... 12

*Employers Ass'n., Inc. v. United Steelworkers,*
  32 F.3d 1297 (8th Cir. 1994) ................................................................. 9

*Farmer v. United Bh. of Carpenters,Local 25,*
  430 U.S. 290 (1977) ........................................................................... 7

*Fort Halifax Packing v. Coyne,*
  428 U.S. 1, 2-3 (1987) ....................................................................... 11

*Frisby v. Schultz,*
  487 U.S. 474 (1988) .......................................................................... 15

*Golden State Transit Corp. v. City of Los Angeles,*
  493 U.S. 103 (1989) ........................................................................... 3

*Golden State Transit Corp. v. City of Los Angeles,*
  475 U.S. 608 (1986) ................................................................... 4, 9, 10

*Hill v. Colorado,*
  530 U.S. 703 (2000) .......................................................................... 15

*International Union, UAW v. Russell,*
  356 U.S. 634 (1958) ........................................................................... 7

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

*Kovacs v. Cooper,*
   336 U.S. 77 (1949) ............................................................................................... 7

*Lehman v. Shaker Heights,*
   418 U.S. 298 (1974) ............................................................................................. 15

*Letter Carriers v. Austin,*
   418 U.S. 264 (1974) ............................................................................................. 10

*Linn v. United Plant Guard Workers of Am., Local 117,*
   383 U.S. 53 (1966) ............................................................................................... 7

*Machinists v. Wisconsin Employment Relations Commission,*
   427 U.S. 132 (1976) .......................................................................................... 3, 9

*Madsen v. Women's Health Center, Inc.,*
   512 U.S. 753 ...................................................................................................... 7

*Malone v. White Motor Corp.,*
   435 U.S. 497 (1978) ............................................................................................. 2

*Maryland v. Louisiana,*
   451 U.S. 725 (1981) ............................................................................................. 2

*Metropolitan Life Ins. Co. v. Massachusetts,*
   471 U.S. 724 (1985) ....................................................................................2, 4, 11

*Miller v. UFCW, Local 498,*
   708 F.2d 467 (9th Cir. 1983) ............................................................................... 12

*Motor Coach Employees v. Lockridge,*
   403 U.S. 274 (1971) ............................................................................................. 2

*NLRB v. Gissel Packing Co.,*
   395 U.S. 575 (1969) ............................................................................................. 5

*Radcliffe v. Rainbow Constr. Co.,*
   254 F.3d 772 (9th Cir. 2001) ............................................................................... 7

*Resident Advisory Bd. v. Rizzo,*
   503 F.Supp. 383 (E.D. Pa. 1980) ......................................................................... 8

*Robinson v. Jacksonville Shipyards, Inc.,*
   760 F.Supp. 1486 (M.D. Fla.1991) ...................................................................... 8

*Rowan v. United States Post Office Dept.,*
   397 U.S. 728 (1970) ........................................................................................... 15

*San Diego Bldg. Trades Council v. Garmon,*
   359 U.S. 236 (1959) .......................................................................................... 3, 7

*Schall v. Martin,*
   467 U.S. 253 (1984) ........................................................................................... 12

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,*
   436 U.S. 180 (1978) ............................................................................................ 5, 7

*St. Thomas - St. John Hotel & Tourism Ass'n. v. Virgin Islands,*
   218 F.3d 232 (3d Cir. 2000) ................................................................................ 11

*Thomas v. Collins,*
   323 U.S. 516 (1945) ............................................................................................. 13

*UAW-Labor Employment & Training Corp. v. Chao,*
   325 F.3d 360 (D.C. Cir. 2003) ............................................................................... 5

*United States v. O'Brien,*
   391 U.S. 367 (1968) ............................................................................................. 15

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 ......................................................................................................... 12

*Washington Serv. Contractors Coalition v. District of Columbia,*
   54 F3d 811 (D.C. Cir. 1995), cert. denied 516 U.S. 1145 (1996) ...................... 11

*West Coast Hotel v. Parrish,*
   300 U.S. 379 (1937) ............................................................................................... 1

*Wisconsin Department of Industry v. Gould,*
   475 U.S. 282 (1986) ............................................................................................... 6

**State Cases**

*Nees v. Hocks,*
   536 P.2d 512 (Or. 1975) ...................................................................................... 11

*Russell v. Kinney Contractors, Inc.,*
   795 N.E. 2d 430 (Ill.App.Ct. 2003) ...................................................................... 7

**NLRB Cases**

*Babcock & Wilcox Co.,*
   77 NLRB 577 (1948) .............................................................................................. 4

*F. W. Woolworth Co.,*
   251 NLRB 1111(1980) ........................................................................................... 4

*Litton Systems, Inc.,*
   173 NLRB 1024 (1968) .......................................................................................... 4

*Peerless Plywood Co.,*
   107 NLRB 427 (1953) .......................................................................................... 14

*Ridgewood Mgmt. Co.,*
   171 NLRB 148 (1968) ......................................................................................... 4, 5

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

**Federal Statutes**

29 U.S.C. 157 .................................................................................................... 5

29 U.S.C. 158 .................................................................................................... 5

**State Statutes**

SB 519 ................................................................................................... passim

ORS 659.800 .................................................................................................. 12

ORS 659.805 .................................................................................................. 12

ORS 659.810 .................................................................................................. 12

ORS chapter 659A .......................................................................................... 12

**Other Authorities**

93 Cong. Rec. S3953 (daily ed. April 23, 1947) .............................................. 5

S.Rep.No. 80-105 ............................................................................................. 5

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

# I.  **INTRODUCTION**

The Complaint against Laborers, Local 296 (Local 296)[1] challenges Oregon legislation (SB 519) as pre-empted by the National Labor Relations Act (NLRA) and contrary to the First Amendment.  The operative provision of SB 519 provides:

> Section 2(1)  An employer . . . may not discharge, discipline or otherwise penalize or threaten to discharge, discipline or otherwise penalize or take any adverse employment action against an employee:  (a) Who declines to attend or participate in an employer-sponsored meeting or communication . . . . if the primary purpose of the meeting or communication is to communicate the opinion of the employer about religious or political matters;

Plaintiffs claim that the first amendment of the United States Constitution and the National Labor Relations Act give them a right to fire workers who decline to listen to employers' religious and political speech.  Plaintiffs have no right to so coerce their employees under the Constitution or federal labor law.

Two facts are critical to an understanding of this case.  First, SB 519 does not bar any person or organization from speaking on any subject.  SB 519 does not regulate speech in any manner.  SB 519 bars only coercive conduct:  "discharge[ing], discipline[ing] or otherwise penaliz[ing] or tak[ing] adverse employment action against an employee."

Second, SB 519 is fully consistent with a long line of state laws, repeatedly upheld by the courts, intended to protect employees against unsafe working conditions, substandard wages, and other oppressive practices *and* with a long line of state laws protecting citizens from being compelled to listen to unwanted speech.  It is now black letter law that "[i]n dealing with the relation of employer and employee, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression."  *West Coast Hotel v. Parrish*, 300 U.S. 379, 392-93 (1937).  Firing and

---

[1]  Laborers Local 296 is a happenstance defendant in this matter based, apparently, on its efforts to organize employees of BrucePac, an Oregon meat processor.  Local 296 has never threatened to nor advocated that others file any action pursuant to SB 519.  This fact raises issues as to the appropriateness of Local 296 as a defendant, and of ripeness, either of which is sufficient to prevent this Court from granting Plaintiffs' Motion.  On this issue, we adopt the response filed by Commissioner Avakian.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1

1  threatening to fire employees who decline to listen to employers' speech about religious or political

2  matters is oppressive and is a proper subject of state regulation.

3  **II.  SB 519 IS NOT PRE-EMPTED BY THE NATIONAL LABOR RELATIONS ACT.**

4  Through SB 519, Oregon has sought to protect employees' freedom of conscience in

5  relation to religious and political matters against coercive conduct by employers.  Congress did not

6  intend to displace the authority of the states to adopt such laws protecting the welfare of their

7  citizens, even where such laws have an incidental effect on labor relations, and no court has held

8  otherwise.

9  **A.    THIS COURT MUST BE RELUCTANT TO INFER PREEMPTION OF A STATE**

10  **LAW.**

11  The preemption question is whether the National Labor Relations Act (NLRA) displaces

12  the state's authority to ban the firing of employees for refusing to attend workplace meetings called

13  by their employer for the purpose of proselytizing with respect to political or religious matters

14  unrelated to employees' job performance.  The "purpose of Congress is the ultimate touchstone" of

15  preemption analysis, *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)(quoting *Retail*

16  *Clerks v. Schermerhorn,* 375 U.S. 96, 103 (1963)), and "[c]onsideration under the Supremacy

17  Clause starts with the basic assumption that Congress did not intend to displace state law."

18  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  "These two precepts, but particularly the latter,

19  have led the [Supreme] Court to declare:  'We are reluctant to infer preemption.'"  *Alameda*

20  *Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1413 (9th Cir. 1996) (quoting *Building &*

21  *Constr. Trades Council v. Associated Builders & Contractors*, 507 U.S. 218, 224 (1993) ("*Boston*

22  *Harbor*")).  This reluctance to infer preemption applies even if the state law touches on the

23  employment relation.  The Court has recognized that it "cannot declare preempted all local

24  regulation that touches or concerns in any way the complex interrelationships between employees,

25  employers, and unions; obviously, much of this is left to the States."  *Metropolitan Life Ins. Co. v.*

26  *Massachusetts*, 471 U.S. 724, 757 (1985)(quoting *Motor Coach Employees v. Lockridge*, 403 U.S.

27  274, 289 (1971).

28  As the National Labor Relations Act contains no express provisions preempting state and

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1    local laws, two distinct doctrines have been created by the courts to determine Congress' intent

2    regarding NLRA preemption.  Both are subject to broad exceptions.  SB 519 is not preempted

3    under either doctrine and falls within the allowed exceptions.

4        Under the *Garmon* theory of preemption, the NLRA preempts state laws that regulate

5    conduct actually or arguably protected by the Act or actually or arguably prohibited.  *San Diego*

6    *Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).  The purpose of the *Garmon* doctrine is to

7    protect the jurisdiction of the National Labor Relations Board (NLRB).  That jurisdiction is not

8    threatened by SB 519.  SB 519 does not regulate conduct actually or arguably protected or

9    prohibited by the NLRA.  The Oregon statute does not ban employer speech and does not prohibit

10   employer communications.  Rather, SB 519 proscribes only the discharge or discipline of

11   employees who choose not to be forcibly required to listen to propaganda about matters of personal

12   conscience unrelated to their job performance.

13       Even if the *Garmon* preemption doctrine did apply, so would the well established exception

14   to the doctrine for state regulation deeply rooted in the protection of important state interests.

15   *Garmon* recognized that preemption principles must yield when the activity regulated is merely

16   peripheral to federal concerns or where the state's need to regulate is so obvious that one would not

17   infer that Congress meant to displace the state's power.  *Garmon*, 359 U.S. at 243-44.  SB 519

18   involves a basic and compelling state interest – protecting citizens from being forced to listen to

19   propaganda in the workplace concerning matters of conscience unrelated to job performance.

20   Oregon's interest in protecting the freedom of conscience of its citizens falls within the zone of

21   state interests respected by federal law and is therefore not preempted.

22       SB 519 is also not preempted under the alternative *Machinists* theory of preemption.  Under

23   *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976), the NLRA

24   preempts state regulation of the use of "economic weapons" (i.e., strikes, lockouts, picketing, etc.)

25   that Congress intended be left unregulated.  The *Machinists* preemption doctrine recognizes that

26   "Congress intended to give parties . . . the right to make use of 'economic weapons,' not explicitly

27   set forth in the Act, free of governmental interference."  *Golden State Transit Corp. v. City of Los*

28   *Angeles*, 493 U.S. 103, 110-11 (1989)(*Golden State II*)(quoting *Machinists*, 427 U.S. at 150).  SB

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

1    519 does not fall under the "economic weapons" rubric of *Machinists* preemption.  Moreover, the

2    Court recognized an exception to *Machinists* preemption which applies to SB 519:  "[T]here is no

3    suggestion in the legislative history of the [National Labor Relations] Act that Congress intended

4    to disturb the myriad state laws then in existence that set minimum labor standards."  *Metropolitan*

5    *Life Inc. Co. v. Massachusetts*, 471 U.S. 724 at 756 (1984).  Congress did not intend to deprive the

6    states of their authority to protect citizens from being fired for declining to listen to speech about

7    religious or political matters.  Oregon's protection of employees in this regard constitutes a

8    permissible minimum labor standard that is applicable to all employees and aimed at protecting

9    their freedom of conscience.

10    **B.    SB 519 DOES NOT REGULATE CONDUCT WHICH IS ARGUABLY**
          **PROTECTED OR PROHIBITED BY THE NLRA.**
11

12            The *Garmon* doctrine of preemption is "intended to preclude state interference with the

13    National Labor Relations Board's interpretation and active enforcement of the integrated scheme

14    of regulation established by the NLRA."  *Golden State TransitCorp. v. City of Los Angeles*, 475

15    U.S. 608, 613-14 (1986)(*Golden State I*)(internal quotation marks omitted).  For *Garmon*

16    preemption to apply, SB 519 must affect rights or remedies under the NLRA or in some other way

17    affect the NLRB's jurisdiction.  SB 519 does none of these.

18            Plaintiffs concede that the coercive conduct barred by SB 519 is not prohibited or arguably

19    prohibited by the NLRA.  The NLRB has repeatedly held that an employer does not commit a

20    violation of federal law by requiring employees, under threat of discharge, to attend mandatory

21    meetings to hear the employer's views.  *See F. W. Woolworth Co.*, 251 NLRB 1111, 1113 (1980)

22    (holding a forced meeting and forbidding workers from asking questions is not an unfair labor

23    practice); *Litton Systems, Inc.*, 173 NLRB 1024, 1030 (1968) ("An employee has no statutorily

24    protected right to leave a meeting which the employees were required by management to attend on

25    company time and property to listen to management's noncoercive antiunion speech...."); *Babcock*

26    *& Wilcox Co.*, 77 NLRB 577, 578 (1948).[2]  These holdings make clear that the conduct regulated

27

28    [2]    It is important to note that *Ridgewood Mgmt. Co.*, 171 NLRB 148 (1968), does not hold that
      compulsory meetings are "protected activity under Section 8(c)" as Plaintiffs claim. [Brief, p.
      5].  The NLRB Trial Examiner in the case cited stated:  "It has long been held that compelling

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

4

1    by SB 519 is not prohibited or arguably prohibited by the NLRA.  In *UAW-Labor Employment &*

2    *Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003), the court held that, inasmuch as the NLRB

3    had decided in a specific case that an employer's failure to post a notice listing certain NLRB

4    rights did not constitute a violation of the Act, an Executive Order requiring a virtually identical

5    posting was not preempted under the *Garmon* theory of preemption.  The same is true here.

6         SB 519 also does not regulate conduct protected or arguably protected by the NLRB.

7    Plaintiffs cite Section 8(c) of the Act, but that section provides only that the expression of views

8    "shall not constitute or be evidence of an unfair labor practice under any of the provisions of this

9    subchapter."  29 U.S.C. 158(c).  In other words, section 8(c) is not a source of protection (in

10   contrast to section 7, 29 U.S.C. 157), but merely a proviso limiting the sweep of the prohibitions

11   otherwise contained in section 8.  Moreover, Section 8(c) clearly addresses only expression.[3]  It

12   does not apply if there is a "threat of reprisal or force or promise of benefit."  29 U.S.C. 158 (c).  It

13   is precisely such a threat of reprisal (as well as acts of reprisal) and only such adverse actions that

14   are regulated by SB 519.  Such threats and coercive acts expressly fall outside the scope of Section

15   8(c).

16        *Garmon* preemption is not appropriate for cases in which "the controversy presented to the

17   state court is . . . different from . . . that which could have been, but was not, presented to the Labor

18   Board."  *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180,

19   197 (1978).  Nothing in SB 519 deprives the Board of primary jurisdiction to determine whether

20

---

21        employees during working hours to attend meetings and listen to antiunion speeches is not a
         violation of the Act if the speeches are **otherwise** protected by Section 8(c) of the Act."  171
22       NLRB at 151 [emphasis added.].  The Board adopted this finding by its Trial Examiner, i.e.,
         that the employer did not violate the Act.  *Id.* at 148.  The Board did not rule that compulsory
23       meetings are "protected activity."

24   3   The Congressional proponents of Section 8(c) cited *Thomas v. Collins* to show that the
         provision would merely confirm a pre-existing first Amendment right.  S.Rep.No. 80-105, at 23
25       (1947), reprinted 1 NLRB *Legislative History of the Labor-Management Relations Act*, 1947,
         at 407, 429 (1948)(hereinafter "LMRA History").  Senator Taft told his fellow senators that
26       Section 8(c) "in effect carries out approximately the present rule laid down by the Supreme
         Court of the United States."  93 Cong. Rec. S3953 (daily ed. April 23, 1947), reprinted in 2
27       *LMRA History* at 1011.  Not surprisingly, then, the Supreme Court characterized Section 8(c)
         in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969) as "merely implement[ing] the First
28       Amendment."  As clearly demonstrated below, SB 519 is consistent with the first amendment.
         It is therefore also consistent with Section 8(c).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

5

1  employer communications are themselves coercive or otherwise prohibited under the NLRA.  SB

2  519 does not present the possibility that "two potentially conflicting statutes" would be "brought to

3  bear on precisely the same conduct."  *Id.* at 193-94 (internal quotations omitted).  This is because

4  there is no claim that an employee could file a charge with the NLRB based on conduct prohibited

5  by SB 519; there is no proceeding possible in Oregon to enforce the statute which would be

6  identical to or implicate any NLRA adjudication; and enforcement of SB 519 would not cause

7  Oregon courts to adjudicate issues under the NLRA.

8       Simply put, the two statutes prohibit different conduct.  The dispositive question under SB

9  519, whether employees were discharged or disciplined for not listening to speech about politics or

10  religion, would be decided independently of the dispositive questions under the NLRA.  SB 519

11  does not provide an alternative forum for deciding any unfair labor practice issue under the NLRA

12  as the conduct it bans is not actionable under the NLRA.  As separate issues are addressed,

13  adjudication of a case brought under SB 519 would not require Oregon courts to define the

14  contours of Section 7 or Section 8 of the NLRA.

15       Finally, SB 519 does not create sanctions that depart from the uniform scheme contained in

16  the NLRA's remedial provisions as the NLRB can provide no relief for the harm sought to be

17  remedied by SB 519.  SB 519 neither attempts to enforce the NLRA through additional punishment

18  for the same violation, as in *Wisconsin Department of Industry v. Gould,* 475 U.S. 282 (1986), nor

19  punishes employers for conduct that the NLRA would protect.  As SB 519 does not intrude upon

20  the Board's primary jurisdiction, it is not preempted under *Garmon.*

21  **C.   SB 519 PROTECTS INTERESTS DEEPLY ROOTED IN LOCAL FEELING AND
       RESPONSIBILITY; IT FALLS INTO AN EXCEPTION TO *GARMON***

22  **PREEMPTION.**

23       Even if the Court concluded that SB 519 did regulate conduct arguably protected or

24  prohibited by the NLRA, it still would not be *Garmon* preempted because there is an exception to

25  the *Garmon* doctrine that applies to this statute.  In *Garmon,* the Court refused "to find withdrawal

26  from the States of power to regulate where the regulated conduct touches interests so deeply rooted

27  in local feeling and responsibility that, in the absence of compelling congressional direction, [the

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1  Court] could not infer that Congress had deprived the States of the power to act." *Garmon*, 359

2  U.S. at 243-244; *see also Belknap, Inc. v. Hale*, 463 U.S. 491, 509 (1983)("Under *Garmon* a state

3  may regulate conduct . . . which is so deeply rooted in local law that the courts should not assume

4  that Congress intended to preempt the application of state law."). State regulations and state tort

5  claims which have been upheld on the basis of "compelling local interests" protect personal dignity

6  just like SB 519, which protects workers' freedom of conscience regarding religious and political

7  matters.[4]

8       Oregon's strong interest in protecting its citizens' freedom of conscience is reflected in

9  state laws across the country. Many states have enacted laws to protect their citizens against being

10  forced to listen to unwanted speech. State statutes protect citizens against intrusions from certain

11  door-to-door solicitors, sound trucks, and targeted residential picketing.[5] A legislature can protect

12  passengers on mass transit from being forced to view unwanted political propaganda posted on

13  placards on transit vehicles;[6] and those seeking medical care from verbal assaults by protesters.[7]

14

15  [4] The "compelling local interests" exception has been recognized with respect to various types of
    injury to the person – both tangible and intangible -- including that caused by defamation,

16  international infliction of emotional distress and violence. *Farmer v. United Bh. of Carpenters,
    Local 25*, 430 U.S. 290 (1977) (state action for intentional infliction of emotional distress

17  brought against union for alleged outrageous conduct not preempted); *Linn v. United Plant
    Guard Workers of Am., Local 117*, 383 U.S. 53 (1966)(defamation claim not preempted);

18  *International Union, UAW v. Russell*, 356 U.S. 634 (1958) (state regulation of mass picketing
    and threats of violence not preempted); *Sears, Roebuck & Co v. San Diego County Dist.

19  Council of Carpenters*, 436 U.S. 180 (1978) (trespass); *Radcliffe v. Rainbow Constr. Co.*, 254
    F.3d 772 (9th Cir. 2001)(false imprisonment, false arrest and malicious prosecution arising out

20  of a trespass arrest is not preempted by the NLRA due to deeply rooted local interests); *Russell
    v. Kinney Contractors, Inc.*, 795 N.E. 2d 430 (Ill.App.Ct. 2003)(state common law action for

21  false imprisonment is not preempted due to deeply rooted local interests, citing *Radcliffe*,
    *supra*.).

22

23  [5] *See Bread v. City of Alexandria*, 341 U.S. 622 (1951)(canvassing by magazine salesmen
    prohibited); *Kovacs v. Cooper*, 336 U.S. 77, 86-87 (1949)(ordinance against sound trucks

24  upheld; *Frisby v. Schulz*, 487 U.S. 474 (1988)(ordinance prohibiting targeted residential
    picketing sustained, explaining that "'the State's interest in protecting the well-being,

25  tranquility, and privacy of the home is certainly of the highest order in a free and civilized
    society'" *Id.* at 484 (citing *Carey v. Brown*, 447 U.S. 445, 471 (1980)), because it puts citizens

26  in the position of having "no ready means of avoiding the unwanted speech." *Id.* at 487.

    [6] *Lehman v. Shaker Heights*, 418 U.S. 298 (1974)(describing riders of public transportation as

27  a captive audience).

    [7] *Madsen v. Women's Health Center*, Inc., 512 U.S. 753, 768 (1994)(medical condition of
28  patients renders them captives).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

7

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1   Even in the workplace, state laws protect workers from unwanted, hostile working environments.[8]

2   Although each of these cases implicates a different form of communication with widely varying

3   content, they are uniform in protecting the freedom not to listen.  The protection extended by SB

4   519 is in keeping with this long history and demonstrated state interest.

5          In preemption cases concerning "interests deeply rooted in local feeling and responsibility,"

6   the Supreme Court has explained that "the state's interest in controlling or remedying the effect of

7   the conduct is balanced against both the interference with the Board's ability to adjudicate

8   controversies committed to it by the Act and the risk that the state will sanction conduct that the

9   Act protects." *Belknap*, 463 U.S. at 498-99.  In *Belknap*, the Supreme Court held that

10  misrepresentation and breach of contract suits brought by workers who had been hired during a

11  strike as permanent replacements for the striking union members and then discharged by the

12  employer as a result of a later settlement agreement with the union were not preempted.  As the

13  Court explained, merely because "federal law permits . . . the employer to hire replacements during

14  a strike" does not mean "that the employer's otherwise valid promises [under state law] of

15  permanent employment are nullified by federal law." *Id.* at 500.

16         With respect to SB 519, just as in *Belknap*, the fact that federal law allows an employer to

17  require employees to listen to its views regarding unionization on pain of discharge does not mean

18  that the employer may disregard state law by firing employees who decline to listen.  In SB 519,

19  Oregon has chosen to protect individual workers who are victimized by their employers in

20  violation of a deeply-rooted local belief in freedom of conscience.  For this reason, SB 519 is not

21  preempted by the NLRA.

22  **D.     SB 519 DOES NOT REGULATE ECONOMIC WEAPONS THAT FEDERAL LAW**
23  **       INTENDS TO LEAVE TO THE FREE PLAY OF ECONOMIC FORCES.**

24         The *Machinists* preemption doctrine, set forth in *Machinists v. Wisconsin Employment*

25

---

26  [8]  *Robinson v. Jacksonville Shipyards, Inc.* 760 F.Supp. 1486, 1535-36 (M.D. Fla.,
         1991)(protecting captive audience female employees from a hostile work environment);
27       *Resident Advisory Bd. v. Rizzo*, 503 F.Supp. 383, 402 (E.D.Pa. 1980)(describing construction
         workers as " a captive audience, who must remain on the jobsite during the workday" and "are
28       powerless to avoid bombardment by derisive speech and noise.").

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

1    *Relations Commission,* 427 U.S. 132 (1976), prohibits state regulation of areas that Congress

2    intended to be unregulated, and hence "to be controlled by the free play of economic forces." *Id.* at

3    140. "[T]he *Machinists* rule create[s] a zone free from all regulations, whether state or federal."

4    *Boston Harbor*, 507 U.S. at 226. The inquiry regarding *Machinists* preemption is whether "the

5    exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective

6    implementation of the Act's processes." *Golden State,* 475 U.S. at 615 (quoting *Machinists,* 427

7    U.S. at 147-148 (quoting *R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 380 (1969)).

8        Analysis of *Machinists* preemption is primarily focused on whether the state provisions will

9    regulate self-help economic weapons available to parties engaged in a collective bargaining

10    dispute.[9] SB 519 does not implicate the economic weapons available to either labor or

11    management during a collective bargaining dispute.

12        *Machinists* preemption has only infrequently been invoked in the organizing context.

13    Nevertheless, in *Chamber of Commerce v. Brown,* ___ U.S. ___, 128 S.Ct. 2408 (2008), the

14    Supreme Court ruled that a California statute which prohibited the use of state funds for employer

15    advocacy during a union organizing campaign was preempted because it "couple[d]s its 'use'

16    restriction with compliance costs and litigation risks that [we]re calculated to make union-related

17    advocacy prohibitively expensive for employers that receive state funds. By making it exceedingly

18    difficult for employers to demonstrate that they have not used state funds and by imposing punitive

19    sanctions for noncompliance, [the statute] effectively reaches beyond 'the use of funds over which

20    California maintains a sovereign interest.'" *Id.* at 2416 (internal quotation marks omitted).

21        SB 519 is not like the statute in issue in *Brown*. SB 519 does not restrict employer speech.

22    It does not limit the right of an employer to say anything, and it does not regulate what the

23    employer may say or when or how often the employer may speak. It protects from discharge and

24

---

25   [9]   *Chamber of Commerce v. Reich,* 74 F.3d 1322 (D.C. Cir. 1996)(Executive Order banning

26    permanent replacements preempted); *Employers Ass'n., Inc. v. United Steelworkers,* 32 F.3d 1297 (8th Cir. 1994) (state law barring employers from hiring permanent replacement workers

27    during a strike is preempted); *Machinists,* 427 U.S. 132 (1976) (state ban on concerted refusal to work overtime to protest working conditions is preempted); *Golden State,* 475 U.S. at 613-

28    14 (City's conditioning renewal of taxi cab franchise license on its making bargaining concessions during contract negotiations is preempted).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

9

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1    discipline those employees who choose not to listen.  There are no record-keeping requirements,

2    onerous or otherwise.  Enforcement is limited to a private action by an aggrieved employee.[10]

3    Unlike the California statute at issue in *Brown*, SB 519 does not burden employer speech with

4    worrisome litigation possibilities, oppressive paperwork requirements, or punitive enforcement

5    mechanisms which, according to the Court in *Brown*, compelled a finding of preemption because

6    of the pressures they create on employers to forego permissible speech.  Under SB 519, employers

7    are free to speak on any subject at any time so long as they follow a bright line rule – don't fire any

8    employee who merely declines to listen.  Thus, SB 519, unlike the law at issue in *Brown*, does not

9    in any way "frustrate effective implementation of the Act's processes," i.e. the free exchange of

10   ideas concerning unionization.  *Golden State*, 475 U.S. at 615.

11        In *Brown*, the Court emphasized "how important Congress deemed such 'free debate' . . .

12   which suffuses the NLRA as a whole," emphasizing that the NLRA "'favor[s] uninhibited, robust,

13   and wide-open debate in labor disputes,'" and that "'freewheeling use of the written and spoken

14   word . . . has been expressly fostered by Congress and approved by the NLRB.'" 138 S.Ct. at

15   2413-24 (quoting *Letter Carriers* v. *Austin*, 418 U.S. 264, 272–273 (1974).  SB 519 does not

16   infringe on the free flow of information underlying employees' exercise of their Section 7 rights

17   and does not impair the employer's ability to communicate with employees.  It does not bar

18   employer speech.  Rather, SB 519 encourages free discussion.  It promotes a marketplace of ideas

19   by supporting an essential element of such free exchange – freedom to acquire knowledge from

20   sources of one's own choosing.  Liberty of the mind is the indispensable foundation of free and

21   robust debate.  Forced propaganda does not foster the free exchange contemplated by the NLRA

22   and, as the Oregon legislature determined, is deeply discordant with our democratic traditions.

23   / / /

24   / / /

25

---

26   [10]  While it is true, as Plaintiffs point out, that SB 519 does not address the discharge of an
27   employee *by a union* for refusing to listen to workplace speech concerning religious or political
     matters, that is because no such circumstance could arise – a labor organization has no
28   authority to require attendance at a meeting and has no authority to discharge employees for
     choosing not to attend.  Brief, 20.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

10

1    **E.    THE STATE'S AUTHORITY TO ESTABLISH MINIMUM WORKING**
2    **CONDITIONS PERMITS IT TO ENACT SB 519.**

3    The Supreme Court has recognized an exception to *Machinists* preemption where the states

4    "traditionally have had great latitude under their police powers to legislate as 'to the protection of

5    the lives, limbs, health, comfort, and quiet of all persons.'"    *Metropolitan Life Ins. Co.* 471 U.S. at

6    756 (quoting *Slaughter-House Cases.* 16 Wall 36, 62 (1873)). This power includes the "broad

7    authority . . . to regulate the employment relationship to protect workers within the State." *Id.*

8    (quoting *DeCanas v. Bica*, 424 U.S. 351, 356 (1976). For this reason, state minimum employment

9    standards legislation has uniformly been held not be preempted by federal law.

10    SB 519 falls comfortably within the nonpreempted category of minimum employment

11    standards legislation. The aim of the Oregon statute is to protect employees who choose not to be

12    propagandized regarding issues of personal conscience unrelated to job performance. Oregon

13    properly chose to establish this minimum protection for all workers in the state.

14    Examples of non-preempted minimum labor standards are abundant. They include child

15    labor laws, minimum and overtime wage laws; ordinances that require successor contractors to hire

16    their predecessors' employees; and statutes requiring that employees be provided with severance

17    pay when they are laid off, sick pay when family members are ill, and unemployment insurance,

18    even during a strike. *Fort Halifax Packing v. Coyne*, 428 U.S. 1, 2-3 (1987)(state statute requiring

19    severance pay is not preempted); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985)

20    (state statute requiring minimum health benefits is not preempted); *Washington Serv. Contractors*

21    *Coalition v. District of Columbia*, 54 F3d 811 (D.C. Cir. 1995), *cert. denied* 516 U.S. 1145 (1996)

22    (substantive employee protection legislation preventing worker dislocation is not preempted).

23    Other minimum labor standards enacted by states which are not preempted establish

24    restrictions on the employment at will doctrine which otherwise allows employers to terminate

25    workers for any reason or no reason. *See, e.g., St. Thomas – St. John Hotel & Tourism Ass'n. v.*

26    *Virgin Islands*, 218 F.3d 232 (3d Cir. 2000) (holding VI's unjust discharge law is not preempted).

27    The Oregon Supreme Court first recognized a public policy exception to the general rule of at-will

28    employment in *Nees v. Hocks*, 536 P.2d 512, 516 (Or. 1975) (employer liable for firing employee

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

11

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1    for participating in jury duty). Most states, including Oregon, bar employee discharge based on a

2    set of protected characteristics. ORS chapter 659A. (prohibiting discrimination in employment on

3    the basis of many characteristics).[11] No such law has been held preempted.

4         As is the case with the Oregon statute in issue, these statutes lawfully extend without

5    differentiation to non-unionized and unionized workers, even those with collective bargaining

6    agreements. The protections of SB 519 likewise apply to all workers in the state regardless of

7    union representation or union preference. The statute protects every Oregon worker from being

8    fired or disciplined for choosing not to be subjected to religious or political indoctrination in the

9    workplace. It is a statute which provides a minimum level of protection to all employees within

10   the State of Oregon and is therefore not preempted.

11        **III.  SB 519 IS FULLY CONSISTENT WITH THE FIRST AMENDMENT.**

12        Plaintiffs' facial challenge to SB 519[12] under the first amendment misses the mark because

13   SB 519 does not prohibit any form of speech. Rather, it prohibits only conduct – the firing or

14   disciplining of an employee who declines to listen to religious or political speech. A long line of

15   precedent distinguishes the protection of speech from permissible regulation of conduct. This is

16   evident, for example, in judicial acceptance of extensive regulation of picketing.[13] Indeed, in one

17   of its original employer free speech decisions, the Supreme Court made clear that employers may

18   have a right to persuade their employees, but "[w]hen to this persuasion other things are added

19

20   [11]  Oregon law provides other protections to employees in the workplace. ORS 659.800
     (misrepresentation to prevent employment prohibited); ORS 659.810 (employer prohibited
21   from filing false statement with employment agency to secure labor) and ORS 659.805
     (blacklisting and blackmailing prohibited). SB 519 is no different.
22

23   [12]  The Supreme Court has instructed the lower courts to "[e]xercis[e] judicial restraint in a facial
     challenge" in order to avoid "unnecessary pronouncement on constitutional issues" and
     "premature interpretations." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S.
24   442, 450, 457 (2008). In fact, the Court has instructed that facial challenges should be rejected
     "where 'at least some' constitutional applications exist." *Id.* at 457 (quoting *Schall v. Martin*,
25   467 U.S. 253, 264 (1984)).

26   [13]  See, e.g., *Miller v. UFCW, Local 498*, 708 F.2d 467, 471 (9th Cir. 1983) ("picketing involves
     elements of conduct as well as the communication of ideas"); *see also Edward J. Debartolo
27   Corp. v. Florida Gulf Coast Bldg & Constr. Trades Council*, 485 U.S. 568, 580 (1988)
     (contrasting picketing, in which conduct element "often provides the most persuasive deterrent
28   to third persons about to enter a business establishment" from pure speech, which "depend[s]
     entirely on the persuasive force of the idea") (internal quotation marks, citations omitted).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

12

1  which bring about coercion, or give it that character, the limit of the [employer's First

2  Amendment] right has been passed." *Thomas v. Collins*, 323 U.S. 516, 537-38 (1945).

3       SB 519 applies only when "other things are added [to speech]" – *i.e.*, an adverse

4  employment action. Under SB 519, protected speech is clearly separable from conduct and only

5  the later is proscribed. An employer can speak to its employees about religious and political

6  matters (and any other matters) and can hold meetings to address those subjects. In fact, SB 519

7  expressly provides that it does not "[l]imit the rights of an employer to offer meetings, forums or

8  other communications about religious or political matters for which attendance or participation is

9  purely voluntary." Section 2(4)(h). Employers can freely speak. The only thing they cannot do

10 under SB 519 is take adverse employment action against employees who decline to listen. The

11 first amendment does not protect such conduct.

12      The full implications of Plaintiffs' first amendment arguments demonstrate clearly why

13 they cannot be accepted. For purposes of first amendment analysis, SB 519 is no different than a

14 law that prevents the use of physical violence to guarantee an audience for religious proselytizing

15 and partisan speech. A law that protects citizens against violence and threats of violence based on

16 their refusal to listen to religious or political speech would clearly lie at the core of the state's

17 power to protect its citizens' freedom of conscience and would not infringe on first amendment

18 freedoms. Yet Plaintiffs' arguments would apply equally to such a law. Plaintiffs' first

19 amendment argument must, therefore, be rejected.

20      Plaintiffs' argument that SB 519 is a prior restraint on speech is baseless. This is made

21 clear from the very first sentence of Plaintiffs' argument: "By restricting prospective speech on an

22 entire topic, SB 519 exacts a prior restraint on covered employers." Brief, 21. The statement is

23 factually incorrect as SB 519 does not so provide. Plaintiffs then assert that SB 519 "prohibits

24 speech before it takes place." *Id*. But SB 519 does not prohibit any speech before or after it takes

25 place or in any manner at all. Plaintiffs even resort to selective and misleading quotation from the

26 statute; they assert: "Allowing, under SB 519, 'an aggrieved employee' to bring a charge that the

27 employer spoke improperly at a mandatory meeting, and allowing that judge to award 'all

28 appropriate relief' is exactly the type of regulation that has been struck down as unconstitutional

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

13

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1  'censorship.'" *Id.* Yet SB 519 does not permit an employee to bring an action on the basis that "an

2  employer spoke improperly" – on any subject. An employee is not "aggrieved" under Section 2(2)

3  of SB 519 unless his or her employer has "discharge[d], discipline[d] or otherwise penalize[d] or

4  threaten[ed] to discharge, discipline or otherwise penalize or take any adverse employment action"

5  against the employee. SB 519 bars only conduct that is wholly separate from speech and thus is

6  clearly not a prior restraint on speech.

7      Plaintiffs' argument that SB 519 is an impermissible "content-based" regulation of speech

8  is likewise baseless. Again, this is made clear by the first sentence of the argument which grounds

9  the point on "'[t]he First Amendment's hostility . . . to prohibition of public discussion of an entire

10  topic.'" Brief, 22. (quoting *Consolidated Edison Co. v. Public Serv. Comm.*, 447 U.S. 530, 537

11  (1980)). As made clear above, SB 519 creates no such categorical prohibition of speech on any

12  topic. Employers remain fully free to discuss religious and political matters.

13      Moreover, even if SB 519 did bar speech on a particular topic, Plaintiffs acknowledge that

14  such viewpoint neutral regulation is permissible if it uses the least restrictive means to further a

15  compelling state interest. Brief, 22. That is clearly the case here. To further the state's interest in

16  protecting the freedom of conscience of employees regarding core matters of individual conscience

17  (religious and political matters) against employer conduct, SB 519 is narrowly tailored to bar only

18  the conduct, i.e., discharge or discipline, while leaving the speech unregulated.[14]

19      Finally, the Supreme Court has made clear that conduct can be regulated even if the

20  regulation has some incidental impact on speech (which is *not* the case here). "This Court has held

21  that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a

22  sufficiently important governmental interest in regulating the nonspeech element can justify

23  incidental limitations on First Amendment freedoms. . . . [W]e think it clear that a government

---

25  [14]  Plaintiffs' citation to the National Labor Relations Board's decision in *Peerless Plywood Co.*,
107 NLRB 427 (1953), as an example of more narrowly tailored regulation is wholly

26  unconvincing as the Board's interest was in insuring a free and fair election to determine if
employees wish to be represented for purposes of collective bargaining. Thus, the Board was

27  concerned about the timing of certain forms of speech. *See Id.* at 429. In contrast, the State of
Oregon's interest is in protecting the freedom of conscience of its employed citizens regardless

28  of the timing of the coercive conduct that infringes on that freedom. More narrowly tailored
regulation such as that created in *Peerless Plywood* simply not protect the state's interest.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

14

1  regulation is sufficiently justified if it is within the constitutional power of the Government; if it

2  furthers an important or substantial governmental interest; if the governmental interest is unrelated

3  to the suppression of free expression; and if the incidental restriction on alleged First Amendment

4  freedoms is no greater than is essential to the furtherance of that interest." *United States v.*

5  *O'Brien*, 391 U.S. 367, 376-77 (1968). Each of those conditions is satisfied here. The State has an

6  important and substantial interest in protecting employees' freedom of conscience in relation to

7  political and religious matters. This interest in unrelated to (and does not result in) the suppression

8  of free speech. Any incidental restriction on alleged first amendment freedoms are no greater than

9  what is essential to further the state's interest because SB 519 leaves employers fully free to speak

10  on these matters.

11       In order to prevail on their first amendment challenge, then, Plaintiffs must establish

12  employers' constitutional right to compel employees to listen to employers' religious and political

13  views. The first amendment creates no such right. The Supreme Court has made clear that the first

14  amendment does not grant any speaker a right to force others to listen. See, e.g., *Lehman v. Shaker*

15  *Heights*, 418 U.S. 298, 307 (1974) (Douglas, J., concurring) ("While [a person] clearly has a right

16  to express his views to those who wish to listen, he has no right to force his message upon an

17  audience incapable of declining to receive it."); *Rowan v. United States Post Office Dept.*, 397 U.S.

18  728, 737 (1970) ("[N]othing in the Constitution compels us to listen to or view any unwanted

19  communication, whatever its merit ."). In fact, the Court has expressly recognized that "States can

20  choose to protect [this right to be let alone]." *Hill v. Colorado*, 530 U.S. 703, 717 n. 24 (2000).

21  *See also Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988) (explaining that a "state may legislate to

22  protect" the unwilling listener). Indeed, a long line of Supreme Court decisions have held that the

23  government can regulate speech to a captive audience in order to protect the unwilling audience.

24  "The First Amendment permits the government to prohibit offensive speech as intrusive when the

25  'captive' audience cannot avoid the objectionable speech." *Frisby*, 487 U.S. at 487. Thus, SB 519

26  does not even regulate to the extent permitted by the captive audience doctrine. SB 519 does not

27  regulate employers' speech to employees on the grounds that employees during the work day,

28  while at the work site, are a captive audience. Rather, SB 519 merely prevents the employer from

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

15

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

1  engaging in conduct – taking adverse action against employees who decline to listen to religious

2  and political speech in their workplace.  Such conduct is clearly not protected by the first

3  amendment.

## IV.  CONCLUSION:

5      SB 519 protects all Oregon workers from being discharged or disciplined for declining to

6  listen to workplace speech on religious or political matters unrelated to job performance.  It does

7  not bar any employer from speaking on any subject – it only proscribes conduct, i.e., adverse

8  employment action.  It is grounded in the state's interest in protecting citizens from being

9  compelled to listen to speech and constitutes a minimum labor standard which does not interfere

10  with the federal labor relations scheme.  For the reasons stated above summary judgment should be

11  denied.

12

13  Dated: February 26, 2010

14                                                    WEINBERG, ROGER & ROSENFELD

15                                                    A Professional Corporation

16                                         By:  /s/David A. Rosenfeld

17                                            DAVID A. ROSENFELD
                                          WEINBERG, ROGER & ROSENFELD

18                                         GILES GIBSON

19                                         GILES GIBSON LAW, LLC

                                       Attorneys for Defendant, Local 296

20  123543/561370

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

16

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States District Court District of Oregon by using the appellate CM/ECF system.

Scott W. Osborne
Heidi Guettler
Mark A. Crabtree
Jackson Lewis, LLP
806 SW Broadway, 4th Floor
Portland, OR 97205

Attorneys for Plaintiffs

Robin S. Conrad
Sane B. Kawka
National Chamber Litigation Center, Inc.
1615 H Street, NW
Washington, DC 20062

Attorneys for Chamber of Commerce of
the United States of America

John R. Kroger
Attorney General
John J. Dunbar
Nathan A. Carter
Assistant Attorney general
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Attorneys for Defendant Brad Avakian
a copy of the document(s) described as:

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**[X]     E-FILE**

I certify under penalty of perjury that the above is true and correct. Executed at Alameda, California, on February 26, 2010.

/s/Katrina Shaw
KATRINA SHAW

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

17

Opposition to Motion for Summary Judgment (Case No. CV 09 1494 MO)