UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ASSOCIATED OREGON INDUSTRIES
and CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA,

No. CV 09-1494-MO

             Plaintiffs,

OPINION AND ORDER

     v.

BRAD AVAKIAN, Commissioner
of the Oregon Bureau of Labor and Industries,
and LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, LOCAL NO. 296,

             Defendants.

**MOSMAN, J.,**

ORS 659.785 creates a private cause of action for employees who are discharged or

disciplined for refusing to attend a "mandatory meeting" at which an employer expresses its

views about unionization. Plaintiffs allege that ORS 659.785 is both unconstitutional and

preempted by the National Labor Relations Act ("NLRA"). Because I find plaintiffs lack standing

to sue the Commissioner and the claims against the Laborers Union are not ripe, I DENY

Plaintiffs' Amended Motion for Summary Judgment (#27) and GRANT Defendants' Cross-

Motions for Summary Judgment.[1]

---

[1] In a telephone status conference held January 27, 2010, defendants said they intended to
cross-move for summary judgment. Because the substance of defendants' cross-motions could be
fully addressed in their responses to plaintiffs' motion for summary judgment, all the parties
agreed that defendants would not file formal cross-motions for summary judgment. Accordingly,
I now construe the Commissioner's and Laborers' responses (#31, 37) as cross-motions for
summary judgment.

**FACTUAL BACKGROUND**

ORS 659.785 provides in relevant part:

An employer . . . may not discharge, discipline or otherwise penalize or threaten to discharge, discipline or otherwise penalize or take any adverse employment action against an employee:

    (a)    Because the employee declines to attend or participate in an employer-sponsored meeting or communication with the employer . . . if the primary purpose of the meeting or communication is to communicate the opinion of the employer about religious or <u>political matters</u>;

    (b)    As a means of requiring an employee to attend a meeting or participate in communications described in paragraph (a) . . . ; or

    (c)    Because the employee . . . makes a good faith report, orally or in writing, of a violation or suspected violation of this section.

ORS 659.785(1) (emphasis added). The law implicates employer-held unionization meetings because "political matters" is defined to include "the decision to join, not join, support or not support any lawful political or constituent group," ORS 659.780(5), and "constituent group" is defined to include a labor organization, ORS 659.780(1).

On December 22, 2009, shortly before the statute went into effect on January 1, 2010, plaintiffs filed suit on behalf of their employer members, alleging that the statute is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-69, and violates the employers' First Amendment rights. (Compl. (#1) ¶¶ 18-32.) Plaintiffs seek declaratory and injunctive relief against defendant Brad Avakian, Commissioner of Oregon Bureau of Labor and Industries ("the Commissioner"), and defendant Laborers' International Union of North America, Local No. 296 ("Laborers' Union"). Several of the employers represented by plaintiffs have filed declarations stating that ORS 659.785 now forces them to make an "unenviable choice" between (1) violating state law and subjecting themselves to "litigation, unwanted press, [and] accusations" and (2) not

holding mandatory meetings they believe are vital to communicating with their employees and protected under NLRA preemption doctrines and the First Amendment. (*See* Adler Decl. (#22) ¶¶ 3-5; Freres Decl. (#24) ¶¶ 3-5; Golomski Decl. (#26) ¶¶ 3-8.)

Because this case involves pure questions of law, plaintiffs moved for summary judgment on February 18, 2010. In their answer to plaintiffs' complaint and in their responses to plaintiffs' motion for summary judgment, defendants assert that this case must be dismissed for lack of subject matter jurisdiction. The Commissioner asserts that he is not a proper defendant in this action because he does not have authority or intention to enforce ORS 659.785. (*See* Avakian Decl. (#32) ¶¶ 3-4.) Therefore, according to the Commissioner, plaintiffs lack standing because they cannot show that their injury—an inability to hold mandatory meetings—has been or will be caused by the Commissioner's actions. The Commissioner also asserts that the claims against him are not ripe for review because none of plaintiffs' members currently face a credible or imminent threat that the Commissioner will enforce ORS 659.785 against them. The Laborers' Union joined in the Commissioner's arguments, emphasizing that neither it nor plaintiffs have currently taken an action that would create a viable case or controversy under Article III of the Constitution.

## DISCUSSION

The court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Article III's "case and controversy" requirement has given rise to the threshold requirements of standing and ripeness. The "irreducible constitutional minimum of standing contains three elements:" (1) an injury in fact; (2) a causal connection between the

injury and the defendant's conduct; and (3) a likelihood that a favorable decision will redress the

injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).[2] In the context of an action

for declaratory relief, a court renders a declaratory judgment, as opposed to an advisory opinion,

"if, and only if, [the court's decision] affects the behavior of the defendant toward the plaintiff."

*Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam).

Constitutional ripeness is a related doctrine designed to avoid "premature adjudication" of

"abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The ripeness requirement assures that

a plaintiff has "asserted an injury that is real and concrete rather than speculative and

hypothetical," and, "in many cases, [ripeness] coincides squarely with standing's injury in fact

prong." *Thomas*, 220 F.3d at 1138-39.

## I.     Claim Against the Commissioner

Plaintiffs assert that they meet the Article III requirements of standing and ripeness

because their employer-members have foregone their right to hold mandatory meetings based on

a reasonable fear the Commissioner will enforce ORS 659.785 against them. Constitutional

standing and ripeness are not met by "the mere existence of a proscriptive statute [or] a

generalized threat of prosecution." *Id.* at 1139 (citing *San Diego County Gun Rights Comm. v.*

*Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996). Instead, Article III requires "a genuine threat of

imminent prosecution." *Id.* (quoting *San Diego County*, 98 F.3d at 1126). In evaluating whether

---

[2]  "Ripeness has two components: constitutional ripeness and prudential ripeness." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009). Because I find plaintiffs' claims lack constitutional ripeness, I do not consider whether this case meets the standard for prudential ripeness. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (prudential ripeness evaluates the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration).

plaintiffs are subject to a genuine threat of imminent prosecution, courts consider: (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question"; (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the challenged statute." *Id*; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1123 (9th Cir. 2009).

Plaintiffs have no case or controversy with the Commissioner because his actions do not pose a genuine or imminent threat to plaintiffs' membership. Unlike other cases finding a threat based on "the Government's failure to disavow application of the challenged provision," *see LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000), the Commissioner explicitly disavowed, through his own declaration under oath and through counsel in open court, any authority or intention to enforce ORS 659.785. (*See* Avakian Decl. (#32) ¶¶ 3-4; Hr'g Tr. (Apr. 9, 2010) (confirming the Commissioner's position that neither the plain language of SB 519 nor the general authority granted by ORS 651.050 require him to enforce ORS 659.785).)

The Commissioner's unequivocal and express disavowal of authority undermines the Court's subject matter jurisdiction on three levels:  the Eleventh Amendment, standing, and ripeness. The Eleventh Amendment bars federal jurisdiction because there is no legitimate "connection between the official sued and enforcement of the allegedly unconstitutional statute." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *see also S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614-15 (9th Cir. 1980) (finding the connection inadequate when it was based only on the attorney general's general mandate to "consult with, advise and direct the district attorneys in all criminal causes"). Similarly, plaintiffs lack standing because they cannot show their injuries are, or ever will be, fairly traceable to the Commissioner. *See Lujan*, 504 U.S. at 560-61 (requiring "a connection

between the injury and the conduct complained of"); *see also Long*, 961 F.2d at 152 (holding no case or controversy existed between plaintiffs and the Attorney General of California where the Attorney General did not "intend[] to pursue, or encourage local law enforcement agencies to pursue" vehicle searches authorized by the challenged statute); *Okpalobi v. Foster*, 244 F.3d 405, 426-28 (5th Cir. 2001) (en banc) (abortion providers lacked standing to sue Louisiana Governor and Attorney General for declaratory and injunctive relief because these defendants lacked authority to enforce a statute that created only a private cause of action).

Finally, plaintiffs' claims are not ripe for review because plaintiffs cannot show they currently face a real and imminent threat of prosecution. *See Stormans*, 586 F.3d at 1123; *see also Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443-46 (10th Cir. 1997) (finding no case or controversy where "the State of Colorado . . . expressly and unequivocally conceded that it has no plans to challenge the School District's existing policies"); *Oklahoma Ass'n of Health Plans v. Beitsch*, No. Civ-00-1160-F, 2002 WL 32061754, at *2-6 (W.D. Okla. Oct. 21, 2002) (unpublished) (finding the plaintiff's claim not ripe for review where plaintiff sued the Commissioner of the Oklahoma State Department of Health seeking a declaratory judgment that a statute creating private rights of action was unconstitutional and preempted by ERISA.) This case is distinct from those cases holding that voluntary cessation of a challenged activity does not remove a genuine threat of imminent prosecution (*see* Pl.'s Reply (#39) 4-5 (collecting cases)), because the Commissioner cannot "cease" to enforce a statute he has never enforced or sought to enforce. And although "it is possible that a change in enforcement philosophy would occur should the statute survive legal challenge" (*Id.* at 5), this purely speculative scenario does not give rise to a real case or controversy under Article III. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

II.      **Claims Against the Laborers' Union**

Unlike the Commissioner, the Laborers' Union has not expressly disavowed any intention

to encourage employees to sue their employers under ORS 659.785. Nevertheless, I find

plaintiffs' claims against the Laborers' Union are not ripe for review because the record does not

show a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of

a declaratory judgment." *See United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (quoting

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

At present, no case or controversy exists between plaintiffs and the Laborers' Union.

There is no evidence that any of plaintiffs' associational employers held a mandatory meeting

after ORS 659.785 went into effect, let alone disciplined or threatened to discipline an employee

who refused to attend a meeting. Until an employer holds a mandatory meeting, and then creates

an employee's cause of action by disciplining an employee who refuses to attend, the Laborers'

Union cannot "encourage" an employee to sue under the statute. Therefore, this case is still

several steps removed from the point at which the Laborers' Union could sue, threaten to sue, or

otherwise encourage employees to sue under ORS 659.785.

Even though a real and concrete controversy has not yet materialized between plaintiffs

and the Laborers' Union, plaintiffs argue that a relaxed ripeness standard applies to their First

Amendment challenge. Where First Amendment rights are at issue, courts accept a lesser

showing of actual controversy because, "even in the absence of a fully concrete dispute,

unconstitutional statutes . . . tend to chill protected expression among those who forbear speaking

because of the law's very existence." *Peachlum v. City of York*, 333 F.3d 429, 435 (3d Cir. 2003).

In light of this concern, standing and ripeness requirements are met as long as the plaintiff can

show that the threat of statutory enforcement chills protected speech or creates a danger of self-

censorship. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988)*; Ripplinger v. Collins*, 868 F.2d 1043, 1047 (9th Cir. 1989). This kind of "pre-enforcement" action is designed to protect individuals from an undesirable choice between complying with the statute and abrogating their constitutional guarantees or violating the statute and risking criminal or civil penalties. *See Virginia*, 484 U.S. at 392; *Babbitt*, 442 U.S. at 298.

This lawsuit is similar to a pre-enforcement action, in that it seeks to have ORS 659.785 declared unconstitutional or preempted before any employee can sue his or her employer. Even in the First Amendment context, however, the case law dealing with pre-enforcement actions speaks only of "enforcement," "prosecution," and "prosecuting authorities." *See Thomas*, 220 F.3d at 1139; *Ripplinger*, 868 F.2d at 1047. This language suggests that pre-enforcement actions are brought to prevent the imposition of criminal or civil sanctions <u>by government actors</u>, such as an attorney general, district attorney, or state regulatory board. *See*, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch. Inc.*, 477 U.S. 619, 621 (1986) (Ohio Civil Rights Commission); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59, 62 (1963) (legislatively created Rhode Island Commission to Encourage Morality in Youth, which was tasked with recommending purveyors of obscenity to the Attorney General for prosecution); *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1115 (9th Cir. 2009) (Department of Health and Human Services); *LSO, Ltd.*, 205 F.3d at 1150 (officials of the California Department of Alcoholic Beverage Control); *Ripplinger*, 868 F.2d at 1047 (Maricopa County Attorney); *Polykoff v. Collins*, 816 F.2d 1326, 1330 (9th Cir. 1987) (same).

But although pre-enforcement review may be warranted when a party forgoes "protected speech in order to avoid civil sanction or criminal penalty," *Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007), I am aware of no case permitting a

plaintiff to preemptively challenge the right of a private actor to bring a private cause of action before that cause of action has arisen. *See Okpalobi*, 244 F.3d at 423 (noting the absence of "any case in which a federal court enjoined enforcement of a statute . . . with private civil, but no criminal penalties."). Article III does not, for example, allow a newspaper to sue for a declaratory judgment that their future statements will not be defamatory, or an employer to sue for a declaratory judgment that its intended conduct toward an employee is not discriminatory. Rather, case law suggests that this "relaxed approach to justiciability" is appropriate "only upon a showing that the plaintiff is immediately in danger of sustaining a direct injury as a result of an executive or legislative action." *Ala. Right to Life*, 504 F.3d at 851. (quoting *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972)) (quotation and alterations omitted) (emphasis added).

In the future, some employers may attempt to hold mandatory meetings and discipline employees who fail to attend. Others will not. Some employees may sue under ORS 659.785. Others will not. The Laborers Union may encourage employees to sue their employers under ORS 659.785, perhaps, as plaintiffs suggested in oral argument, by handbilling, picketing, or offering to pay for an employee's attorney. Or it may not. For these reasons, we do not know whether there will ever be a case or controversy about ORS 659.785 between plaintiffs and this private defendant. This Court does not have subject matter jurisdiction to give an advisory opinion that, if the Laborers' Union ever sues an employer under ORS 659.785 on behalf of a discharged employee, the lawsuit would be pre-empted by the NLRA. Although it is conceivable that the Laborers' Union could someday encourage employees to sue the employers that plaintiffs represent, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation and citation omitted).

## CONCLUSION

Plaintiffs' case fails for an inability to show their injuries have been or will be caused by the defendants they have sued. For the foregoing reasons, Plaintiffs' Amended Motion for Summary Judgment (#27) is DENIED, and Defendants' Cross-Motions for Summary Judgment are GRANTED.

IT IS SO ORDERED.

DATED this  6th  day of May, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court